COMMONWEALTH OF VIRGINIA, EX REL., ETC.

V.

MARIE EDWARDS

Record No. 850967

MEDICAID FRAUD CONTROL UNIT, ETC.

V.

JOHN DOE, ET AL.

Record No. 850456

June 10, 1988

Present: All the Justices

*H. Elizabeth Shaffer, Assistant Attorney General (H. Lane Kneedler, Chief Deputy Attorney General; John B. Russell, Jr., Senior Assistant Attorney General,* on briefs), for appellant. (Record Nos. 850967 and 850456)

*Joseph W. Kaestner (Bell, Kaestner & Willett,* on brief), for appellees. (Record Nos. 850967 and 850456)

COMPTON, J., delivered the opinion of the Court.

We consolidated for appeal two cases arising from the Attorney General's efforts to audit and investigate a provider which furnished services under the State Medical Assistance Plan (Medicaid). Medicaid is a jointly funded state-federal health care program designed to provide medical assistance to needy persons who qualify. 42 U.S.C. § 1396 (a) (1986). In Virginia, the program is administered by the Department of Medical Assistance Services. Code § 32.1-323.

In 1981, the General Assembly enacted Chapter 9 of Title 32.1 dealing with regulation of medical assistance, Code §§ 32.1-310 to -321. Acts 1981, ch. 255. The stated purpose of the Chapter was to institute a proper regulatory and inspection program in connection with the providing of medical, dental, and other health services to recipients of medical assistance. One aim of the Chap-

ter was "to assure that the recipient receives such services as are paid for by the Commonwealth." § 32.1-310. As authorized by statute, the Medicaid Fraud Control Unit was established within the Office of the Attorney General to audit and to investigate. § 32.1-320(A). For prosecutions under the Chapter, the Attorney General refers the matter to the Commonwealth's attorney in the city or county where the offense occurred. § 32.1-321.

The primary statute under consideration in these cases is § 32.1-320 which, in pertinent part, provides that the Attorney General shall have the authority to, "Issue subpoenas, compel the attendance of witnesses, administer oaths, certify to official acts, take depositions within and without the Commonwealth as now provided by law, and compel the production of pertinent books, payrolls, accounts, papers, records, documents and testimony relevant to such investigation." § 32.1-320(B)(2).

## I. Commonwealth of Virginia, ex rel., Etc. v. Edwards

The sole issue in this case is whether a person subpoenaed to testify before an authorized representative of the Attorney General, under the foregoing statute, is entitled to have retained counsel present during the interrogation.

In August 1985, appellee Marie Edwards was served with a subpoena issued by the Medicaid Fraud Control Unit commanding her to appear at a designated time and date before the Attorney General, or his authorized representative, in his Richmond office "to be examined under oath in accordance with the provisions of Code § 32.1-320 B.2." The summons recited it was issued in connection with an investigation by the Attorney General of possible violations of law in regard to nursing home services reimbursed under Medicaid. Edwards was an employee of Blue Ridge Nursing Center, Inc., a Medicaid contractual provider of nursing home services.

Edwards appeared, with retained counsel, at the Attorney General's office to be interrogated. Because her attorney was not permitted to be present in the room during the interrogation, she refused to answer questions propounded by an assistant Attorney General.

Immediately, the assistant Attorney General, following procedure outlined in § 32.1-320(B)(2), filed a petition and affidavit in the court below asking that Edwards be required to show cause why she had failed and refused to answer the questions. After a

hearing, the trial court ruled that the Attorney General had sought to take a "deposition" within the meaning of the statute. The trial court determined "that a witness appearing in response to a subpoena issued pursuant to . . . § 32.1-320(2) has a right to have privately retained counsel present during a deposition and may refuse to respond to questions when the Attorney General prohibits counsel from appearing with the witness." We awarded the Attorney General an appeal from the September 1985 order dismissing the show cause proceeding.

■ At the outset, we must delineate the scope of the issue to be decided. In her appellate brief, Edwards takes the position that a "witness has a constitutional right to the presence of counsel" at the proceeding in question. During the hearing below, counsel for Edwards stated, "I frankly concede there is no constitutional right to counsel in this particular setting." In this case, we perceive no meaningful distinction between "right to counsel" and "right to presence of counsel" in the constitutional sense. Thus, in view of Edwards' concession made in the trial court, we will not entertain on appeal any constitutional issue raised by her. *See generally Anonymous* v. *Baker*, 360 U.S. 287 (1959), and *In Re Groban*, 352 U.S. 330 (1957) (state law explicitly permitting exclusion of counsel for witness giving testimony at investigatory proceeding held not to violate United States Constitution).

This brings us to the issue debated in the trial court and on appeal, that is, whether, under the statute in question, the person interrogated is entitled to the presence of retained counsel during the interrogation. Stated differently, does the statute give the Attorney General, or the Attorney General's representative, the power to exclude such counsel from the hearing room during the interrogation? We hold that it does not.

■ The Attorney General argues that the portion of the statute in issue contemplates two alternative activities by the Medicaid Fraud Control Unit relating to interrogation of citizens. First, according to the argument, the Unit may take a "deposition." Second, according to the argument, the Unit may subpoena a person to give, in the language of the statute, "testimony relevant to such investigation." Stating that a person is entitled to be accompanied by counsel at a "deposition," the Attorney General argues that the second type of procedure was employed in this case, at which counsel for the witness may be excluded.

We need not decide whether the statute contemplates two interrogative activities, or only one. We will agree with the Attorney General and assume without deciding that a second activity was employed, that is, the taking of "testimony relevant to such investigation." Nevertheless, nowhere in the statute has the Attorney General been given the power or authority to exclude a person's retained counsel from such a hearing.

█ In the criminal, constitutional context, this Court has decided that, in Virginia, the right to have the assistance of counsel is a "fundamental" right, although such right is not explicitly set out in the Constitution of Virginia. *Watkins* v. *Commonwealth*, 174 Va. 518, 522, 6 S.E.2d 670, 671 (1940). More significant and pertinent to this case, however, the General Assembly has established a definitive public policy which recognizes that a person has a right to have counsel present during investigatory proceedings which are similar to the present activity. For example, under the Administrative Process Act specific provisions are made for parties to be accompanied by counsel for both informal fact-finding activities, Code § 9-6.14:11, and formal proceedings, Code § 9-6.14:12(C). Any witness appearing before a special grand jury has the right to have "counsel of his own procurement" present when he testifies. Code § 19.2-209. A witness before a multi-jurisdictional grand jury is entitled to the "presence of counsel" in the grand jury room, but such counsel "may not participate in the proceedings." Code § 19.2-215.5. Under the Virginia Antitrust Act, a person compelled to testify before the Attorney General, or the Attorney General's designee, may be "accompanied and advised by counsel, but counsel may not, as a matter of right, otherwise participate in the investigation." Code § 59.1-9.10(h).

█ Given this well-defined public policy, and considering that the statute in question is wholly silent on a citizen's privilege to have retained counsel present during the interrogation, we will not read into the enactment authority for the Attorney General to exclude counsel who accompanies the witness to the hearing. Even though the Attorney General represents that "Edwards was not a target of the investigation," nonetheless, the statutory framework contains no guarantee that the witness at such a hearing might not later become a "target," either criminally or civilly. The importance of the advice of counsel to a lay witness at such a proceeding is apparent. For example, when and whether the witness

should exercise the privilege against self-incrimination may be a vital consideration to the client.

The Attorney General, however, relying on the statutory provisions we have just enumerated, contends that settled rules of statutory construction prevent this Court from taking "an otherwise clear statute and add[ing], by implication, procedures and protections explicitly found in other statutes." The Commonwealth contends that "the omission from the Medicaid fraud subpoena statute of any mention of presence of counsel was an intentional legislative act to which this Court is impelled to adhere." The argument is that "Edwards would have the explicit mandate of § 32.1-320(B)(2), dispensing with the presence of counsel, yield to what she perceives to be the implicit mandate of other statutes applying to different proceedings which provide for the assistance of counsel." We are not persuaded by that argument.

In the first place, the statutory provision does not "dispense with the presence of counsel"; it is entirely silent on the subject. In the second place, and more importantly, the Commonwealth has disregarded an important maxim of statutory construction that controls in this case.

■ Enactments which constitute an exception to a well-defined statutory policy are given a strict construction. *Wheelwright* v. *Commonwealth*, 103 Va. 512, 519, 49 S.E. 647, 649 (1905). As we have demonstrated, there is a well-defined public policy established by the General Assembly favoring the attendance (not necessarily the participation) of retained counsel in proceedings like the one under consideration. Construing the statute strictly and noting its silence on the subject of counsel, we will not assume that the General Assembly meant to deviate from that policy by implication. If that policy is to be abrogated in the Medicaid fraud area, such nullification must be accomplished by specific legislative action, not by judicial fiat.

Accordingly, we hold that the trial court did not err in dismissing the show cause proceeding.

## II. *Medicaid Fraud Unit, etc. v. Doe, et al.*

This case involves a waiver of the attorney-client privilege. Information obtained by an accountant employed by an attorney performing legal services for a client was reported by the client voluntarily to an outside party, thus creating an obligation to furnish details underlying the published data. The narrow question

presented is what details must be disclosed, given the facts of this case.

In August 1984, an assistant Attorney General, on behalf of the Medicaid Fraud Control Unit, issued a subpoena duces tecum pursuant to Code § 32.1-320(B)(2) to Richard Burke, a certified public accountant, requiring him to produce

"Any and all original records and documents pertaining to Blue Ridge Nursing Center, Inc., Schedule of Adjustments attached to November 17, 1983 letter signed by Alice M. Moore, Administrator and addressed to Mr. Edward R. Martin, Reimbursement Representative, Division of Provider Reimbursement, Virginia State Department of Health, 109 Governor Street, Richmond Virginia 23219, for which services were rendered by a health care provider and reimbursed by the Department of Health under the Plan for Medical Assistance, including but not limited to correspondence, workpapers, schedules and analyses."

Blue Ridge Nursing Center, Inc., and its two owners were voluntary participants in the Virginia Medicaid plan and provided nursing home care to Medicaid recipients. Blue Ridge accepted reimbursement for performing these services. The recipient's acceptance of reimbursement authorizes the Attorney General to inspect and audit all records in connection with the providing of such services. Code §§ 32.1-310, -320(A).

In November 1984, asserting privilege, Blue Ridge filed a motion to quash that portion of the subpoena requiring production of "correspondence, workpapers, schedules and analyses." To conceal their identities initially, Blue Ridge and its owners filed pleadings as "John Doe, Richard Roe, and A.B.C. Inc."

Following an evidentiary hearing on the motion, the trial court ordered Blue Ridge to produce the materials in issue for an *in camera* review. After examination of the records, the court granted the motion as to documents marked 1 through 13, 15, 28 through 37, and the highlighted parts of 16 through 27. The court denied the motion as to documents 14, 38, 39, and the unhighlighted parts of 16 through 27. The Attorney General has appealed the March 1985 order setting forth the trial court's rulings.

Under Medicaid procedure, the provider of services is reimbursed for costs relating to patient care, upon submission of an

annual cost report. In October 1983, Blue Ridge's owners sought advice from their attorney, Martin A. Donlan, Jr., in connection with "certain Medicaid reimbursement issues that were being raised" pertaining to 1981 and 1982 cost reports which had been submitted to the Department of Medical Assistance Services. The attorney retained the services of accountant Burke. The accountant and the attorney visited the client's place of business, met with the owners, and reviewed the client's books and records. As a result, "certain schedules and certain work papers" were created and the attorney was able to form "a number of legal opinions with respect to a number of reimbursement issues all which pertain to this particular client." Then, the attorney advised the client "on certain courses of action to take."

The attorney recommended that the client file a "cost settlement adjustment report" for 1981 and 1982 with the State Health Department's Division of Provider Reimbursement. Accordingly, the accountant and the attorney jointly compiled information that was submitted voluntarily along with a letter on November 17, 1983 signed by Blue Ridge's administrator. According to the letter, certain "cost report adjustments" were set forth in the schedule attached to the letter. These adjustments, according to the letter, "generally relate to costs which did not relate to patient care." The adjustments reduced Blue Ridge's rate of reimbursement.

In February 1984, the accountant met with a provider reimbursement representative of the Medicaid program to discuss the November 17 letter. Subsequently, a Provider Adjustment Report containing additional information was filed by Blue Ridge after further consultation among the accountant, the attorney, and the client. According to the evidence, the State Health Department considers the cost report files, in which the November 17 letter and the Provider Adjustment Report are kept, accessible to almost "everyone in the Division of Provider Reimbursement and any member of the public who requests access to them under the Freedom of Information Act."

In August 1984, during the Attorney General's investigation of Blue Ridge, the subpoena duces tecum in dispute was issued and the motion to quash was filed invoking the attorney-client privilege.

 Confidential communications between attorney and client made because of that relationship and concerning the subject mat-

ter of the attorney's employment "are privileged from disclosure, even for the purpose of administering justice." *Grant* v. *Harris*, 116 Va. 642, 648, 82 S.E. 718, 719 (1914); *accord Seventh District Committee* v. *Gunter*, 212 Va. 278, 287, 183 S.E.2d 713, 719 (1971). The privilege attaches to communications of the client made to the attorney's agents, including accountants, when such agent's services are indispensable to the attorney's effective representation of the client. *United States* v. *Cote*, 456 F.2d 142, 144 (8th Cir. 1972); *United States* v. *Kovel*, 296 F.2d 918, 921 (2d Cir. 1961). Nevertheless, the privilege is an exception to the general duty to disclose, is an obstacle to investigation of the truth, and should be strictly construed. 8 Wigmore, Evidence § 2291 at 554 (McNaughton rev. 1961) (hereinafter, Wigmore).

■ The privilege may be expressly waived by the client, or a waiver may be implied from the client's conduct. *Grant*, 116 Va. at 648-49, 82 S.E. at 719. The waiver, like the privilege, belongs to the client and not to the attorney. Wigmore, § 2327 at 635.

■ The proponent has the burden to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived. *United States* v. *Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

■ In deciding whether the privilege has been waived by implication

"regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and constancy. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final." Wigmore, § 2327 at 636.

■ When a client communicates information to his attorney with the understanding that the information will be revealed to others, the disclosure to others effectively waives the privilege "not

only to the transmitted data but also as to the details underlying that information." *Cote*, 456 F.2d at 145. In other words, "The client's offer of his own or the attorney's testimony as to a *part of any communication* to the attorney is a waiver as to the whole of that communication, on the analogy of the principle of completeness." Wigmore, § 2328 at 638.

"The details underlying the published data are the communications relating the data, the document, if any, to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document. Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege. If any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged, must be removed by the reviewing court before the document may be produced." *United States* v. *(Under Seal)*, 748 F.2d 871, 875 n.7 (4th Cir. 1984), *vacated as moot on other grounds*, 757 F.2d 600 (4th Cir. 1985).

The work product doctrine is closely related to the attorney-client privilege. Generally, material such as "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs," which are "prepared by an adversary's counsel with an eye toward litigation" may be free from discovery. *Hickman* v. *Taylor*, 329 U.S. 495, 511 (1947). *See Rakes* v. *Fulcher*, 210 Va. 542, 546, 172 S.E.2d 751, 755-56 (1970). There is no work-product issue in this case, however, because there is insufficient evidence to support a finding that the attorney prepared the challenged material "with an eye toward litigation." The information compiled in this case was gathered solely for the purpose of amending previously filed annual cost reports, not in anticipation of litigation. Therefore, we deal only with the attorney-client privilege and the extent of the waiver.

There is no claim of express waiver here. Blue Ridge agrees that the voluntary submission to the State Health Department's Division of Provider Reimbursement of data amending the annual cost reports impliedly waived the attorney-client privilege and that it was under an obligation, if requested, to provide the Common-

wealth "all the facts, figures and computations underlying each of the items" in the reports. According to Blue Ridge, the State "has a right to know the basis of the figures it is asked to rely upon." The Commonwealth is not entitled to disclosure, according to Blue Ridge, of those parts of the documents examined *in camera* "found to contain notes and memoranda of consultations between the attorney and his client, as well as the attorney's analysis." Blue Ridge contends that none of the excluded material constitutes "underlying detail" of the information in the amended cost reports.

The Attorney General, on the other hand, argues that the Commonwealth is entitled to examine all documents necessary "to fully evaluate the contents of and reasons for the adjustments requested in the November 17, 1983, letter and schedule submitted to the Medicaid program." The Attorney General asserts the trial court erred in ruling that the privilege applied to the following material, based on the description furnished to the trial court by counsel for Blue Ridge when the data was submitted for *in camera* inspection:

*Group 1.* Documents 1 through 10 - summaries of certain transactions written by the accountant;

*Group 2.* Documents 12, 13 and 15 - accountant's notes of interviews with Blue Ridge's manager;

*Group 3.* Highlighted portions of Documents 16 through 23 - information disclosed to accountant by Blue Ridge's owners;

*Group 4.* Highlighted portions of Documents 24 through 27 - information disclosed in an interview with Blue Ridge's owners at which the accountant and attorney were present;

*Group 5.* Documents 28 through 33 - notes of an interview with the owners by the attorney and accountant;

*Group 6.* Documents 36 and 37 - a note concerning additional needed documentation and a summary review, respectively.

We, of course, have examined the material in issue. The pages appear to be machine copies of original documents. We have compared the information disclosed voluntarily in the November 17 letter and the subsequent Report with the contents of the excluded

material to determine whether the trial court correctly excluded the data.

Attached to the November 17 letter was a "Schedule of Adjustments." This listed nine categories, including administration, depreciation for buildings and moveable equipment, dietary, housekeeping, laundry and linen, plant operation, and plant maintenance. Opposite most of the categories was a figure for the years 1981 and 1982. The schedule showed a total adjustment of $18,691.90. The Provider Adjustment Report, a two-page form, contained a brief explanation of each adjusted item shown on the schedule.

When there is a waiver, the difficult task is to determine what underlying data the client intends or assumes will be disclosed and what other communications the client expects or assumes will remain confidential. The court must examine the circumstances from an objective standpoint. It "must look to the services which the attorney has been employed to provide and determine if those services would reasonably be expected to entail the publication of the clients' communications." *(Under Seal)*, 748 F.2d at 875. We now turn to the documents to determine what, if any, additional information the trial court should have ordered disclosed, based on the principles we have set forth.

*Group 1.* The trial court properly ruled the documents should not be available for inspection. Each page, labelled "Memoranda & Notes," contains handwritten notations by the accountant. Each page also contains the attorney's and accountant's "estimation" whether the information about certain facets of the nursing home operation was known to the Attorney General, whether the particular items, in the opinion of counsel, should have been disclosed on the Medicaid reimbursement form, whether the item, in fact, had been disclosed to Medicaid, and whether the particular items had any "tax consequences." The information in this group contains client communications which the client would reasonably expect to remain confidential.

*Group 2.* The trial court correctly decided that these documents are privileged. The pages contain notes written by the accountant of an interview conducted by the attorney and accountant with the client's "manager," Marie Edwards. This information is not directly related to the published data and contains information that the client would not reasonably expect to be disclosed, given the nature of the services the attorney was employed to perform, that

is, to consider "certain Medicaid reimbursement issues that were being raised."

 *Group 3.* The trial court properly denied discovery of the highlighted portions of these documents. The excluded items merely identify the source of information disclosed to the accountant and attorney by the client's officers. They also contain the accountant's and attorney's "assessment" of the tax consequences of those disclosures. We conclude that the client would reasonably expect this information to remain confidential under these circumstances.

 *Group 4.* The trial court correctly denied discovery of the highlighted parts of these pages. The excluded information involves the attorney's assessment of the income tax consequences of the transactions summarized on the pages. Also, there are initials of the client's officers indicating the source of certain information disclosed in an interview with the accountant and attorney. The pages also contain the attorney's opinion noted throughout concerning whether disclosure of the information was appropriate. The excluded portions of these documents do not contain information directly related to the published data. Furthermore, the client could not reasonably have expected that counsel's tax advice would be published in the course of evaluating "certain Medicaid reimbursement issues."

 *Group 5.* The trial court properly ruled these documents are privileged. The pages contain handwritten notes, apparently made by the accountant, of interviews conducted with Blue Ridge's owners by the accountant and the attorney. The court's action was proper because the information is not directly related to the published data and the client would not reasonably expect it to be revealed.

 *Group 6.* The trial court did not err in refusing discovery of these two documents. One contains the attorney's and accountant's advice to the client recommending additional documentation. The other contains a summary based on interviews with the client concerning a particular transaction. Given the nature of the services to be performed by the attorney, the client would not reasonably expect publication of these communications. Moreover, the underlying data was not necessary to the preparation of the published data and it contains client communications not directly related to the contents of the November 17 letter and subsequent schedule.

For these reasons, the order appealed from will be affirmed.

Record No. 850967 - *Affirmed.*
Record No. 850456 - *Affirmed.*

CARRICO, C.J., dissenting.

## I. *COMMONWEALTH v. EDWARDS*

As the majority opinion indicates, the sole question in the *Edwards* case is whether a person subpoenaed to give non-deposition testimony before an authorized representative of the Attorney General pursuant to Code § 32.1-320(B)(2) is entitled to have retained counsel present during the interrogation. The majority answers the question affirmatively, all the while conceding that neither constitutional mandate nor statutory provision requires the presence of counsel during such interrogation.

Instead, the majority finds a right to the presence of counsel in what it terms a "well-defined public policy" which, the majority says, is derived from the fact that the General Assembly has recognized the right to the presence of counsel "during investigatory proceedings . . . similar to the present activity." As examples of similar activities, the majority cites proceedings under the Administrative Process Act, hearings before special and multi-jurisdictional grand juries, and investigations authorized by the Virginia Antitrust Act.

I have difficulty equating the investigatory hearings involved in this case with proceedings under the Administrative Process Act and hearings before special and multi-jurisdictional grand juries. Be that as it may, the majority has no apparent difficulty in saying: "Given this well-defined public policy, and considering that the statute in question is wholly silent on a citizen's privilege to have retained counsel present during the interrogation, we will not read into the enactment authority for the Attorney General to exclude counsel who accompanies the witness to the hearing."

This reluctance of the majority to read into the statute something not there is certainly commendable. Yet, the majority has done precisely what it abjures. It *has* read something into the statute clearly not there, *viz.*, the right to have counsel present at a hearing before the Attorney General. The majority simply cannot say the Attorney General lacks authority to exclude counsel from a hearing without also saying the witness has a right to have coun-

sel present, and, of course, the statute contains neither a requirement of the presence of counsel nor a prohibition against exclusion.

The controlling legal principle operative here is that the General Assembly, not this Court, determines public policy. I think the General Assembly made a deliberate policy decision not to require the presence of counsel at investigatory hearings before the Attorney General when it enacted Code § 32.1-320(B)(2). I would afford that decision due respect and order the witness to answer the Attorney General's questions without the presence of counsel.

## II. *MEDICAID FRAUD UNIT v. DOE*

In the *Doe* case, the majority upholds the trial court's enforcement of the attorney-client privilege in six groups of evidentiary material. In each instance, the majority holds the material protected by the privilege because it involves information the client would expect to remain confidential.

But the client's expectations are irrelevant here. The rule is that when a client communicates information to an attorney knowing the information will be disclosed to others, the disclosure waives the privilege not only with respect to the information communicated but also with respect to underlying details. In other words, in these circumstances, the client waives his expectations of nondisclosure.

In my opinion, the data in all six groups are merely the underlying details of the information voluntarily disclosed. I would require submission of these underlying details.

My views would result in reversal in both cases.