## CIRCUIT COURT OF ALBEMARLE COUNTY

William Wertenbaker

v.

Wendall L. Winn, Jr.

April 9, 1993

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on Petition for Discovery before the filing of an action, pursuant to Rule 4:2 of the Rules of the Supreme Court of Virginia. The Petitioner, Mr. William Wertenbaker, is a beneficiary under the will of his mother, Nancy Hale Bowers. Mrs. Bowers was a resident of Albemarle County and died on September 24, 1988. Her will, dated November 11, 1987, was admitted to probate by the Albemarle County Clerk in 1988.

Mrs. Bowers was married to Fredson Bowers, Petitioner's stepfather. Mr. Bowers was also a beneficiary under Mrs. Bowers' will and, in addition, served as co-executor. Mr. Bowers died on April 11, 1991. His will, dated December 22, 1988, and codicil, dated June 27, 1990, were admitted to probate on April 22, 1991.

Respondent in this matter, Wendall L. Winn, Jr., is a co-executor of both Mr. Bowers' will and Mrs. Bowers' will. Apparently, he was also a witness to the execution of both wills. In addition, Petitioner asserts, based on information and belief, that he was the lawyer responsible for preparing the two documents.

The basis of Petitioner's present claim is his belief that Mr. Bowers executed a will on November, 1987, and that this earlier document was subsequently revoked by the December, 1988, will. In her 1987 will, Mrs. Bowers had established a qualified terminable interest property (QTIP) trust for Mr. Bowers' benefit during his lifetime. Upon his death, the remaining assets were to pour over into a residuary trust for

the benefit of Mrs. Bowers' issue, including the Petitioner. It is Petitioner's contention that Mr. Bowers executed a will in 1987 as part of an agreement between Mr. and Mrs. Bowers whereby Mr. Bowers' estate taxes should be paid out entirely of his own residuary estate, without apportionment to the QTIP trust established in Mrs. Bowers' will. Petitioner claims that Mr. Bowers' original 1987 will was written in accordance with this arrangement but that Mr. Bowers breached the agreement in his subsequent will by allowing Mrs. Bowers' QTIP trust to be applied against his own estate tax liability, pursuant to Virginia Code § 64.1–161. Since Mr. Bowers' gross estate was significantly larger than his wife's, Petitioner alleges that this resulted in substantially greater tax liability against the trust than would have been the case had Mrs. Bowers left her estate outright to her issue.

In addition, Mr. Bowers executed a codicil to his will on June 27, 1990, dealing with the distribution of a number of family heirlooms. Petitioner now contends that the disposition of those heirlooms contained in that codicil was contrary to Mrs. Bowers' intentions, as expressed orally and in writing to the Petitioner. Petitioner claims that the codicil breached an alleged agreement between Mr. and Mrs. Bowers that Mr. Bowers would have a life estate in the heirlooms in question and that they would be distributed to her issue, in accordance with her wishes, by him as co-executor of Mrs. Bowers' will.

Petitioner believes that Mr. Bowers' 1987 will exists and that it is currently in Respondent's possession. Accordingly, Petitioner seeks discovery of the will and any other documents in Respondent's files relating to Mrs. Bowers' estate, as well as any documents relating to Mr. Bowers' estate insofar as it pertains to the assets from Mrs. Bowers' estate. Petitioner also seeks to depose Respondent on the same substantive issues. Respondent has resisted this request for discovery on the grounds that such documents and testimony are protected by the attorney-client privilege.

### Discussion

The court will consider first the Petitioner's request to discover documents in Respondent's files relating to Mrs. Bowers' estate matters. In *Hugo v. Clark*, 125 Va. 126 (1919), the Supreme Court held that the attorney-client privilege does not always prohibit the disclosure by an attorney of client communications relating to that client's will. In particular, where the party seeking discovery is not asserting a

claim adverse to the decedent client's estate but is rather claiming under the decedent client, the attorney-client privilege presents no obstacle to disclosure. *Id.* at 135.

In the case at bar, the Petitioner is not asserting an adverse claim against Mrs. Bowers' estate at all but rather against the estate of Mr. Bowers. As a result, there is no basis for the Respondent to raise a claim of privilege on Mrs. Bowers' behalf respecting either her will or any documents relating to her will. In addition, the attorney-client privilege does not bar the disclosure by Respondent of any discussions he might have had with Mrs. Bowers relating to the execution of her will in November, 1987. Accordingly, the court orders Mr. Winn to produce any documents in Mrs. Bowers' file pertaining to the 1987 will and holds that Mr. Winn will be required to answer any questions relating to discussions he may have had with her regarding that will.

*Mr. Bowers' Will*

Petitioner also seeks discovery of any testimony or documents in Respondent's possession relating to the alleged 1987 will executed by Mr. Bowers, which Petitioner asserts was made pursuant to an agreement with Mrs. Bowers. This request raises more difficult concerns, as it has generally been held that an estate is entitled to assert the attorney-client privilege on behalf of a decedent testator where, as here, the estate is defending against a claim that the decedent breached a contract not to revoke an earlier will. *Duggan v. Keto*, 554 A.2d 1126, 1141 (D.C. Ct. App. 1989). Since the Respondent may be entitled to claim the attorney-client privilege regarding documents or discussions surrounding Mr. Bowers' estate, the court must examine whether the requirements for applying the privilege have been met.

Virginia courts have long held that confidential communications between attorney and client, made because of that relationship and concerning the subject matter of the attorney's employment, are privileged from disclosure, even for the purpose of administering justice. *Commonwealth v. Edwards*, 235 Va. 499, 508–09 (1988); *Grant v. Harris*, 116 Va. 642, 648 (1914). The privilege is an exception to the general duty to disclose, however, and as an obstacle to the truth should be strictly construed. *Edwards*, 235 Va. at 509.

The party seeking to assert the privilege bears the ultimate burden to establish: (1) that the attorney-client relationship existed; (2) that the communications under consideration are privileged; (3) that the privi-

lege was not waived. *Edwards*, 235 Va. at 509; *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). Waiver of the privilege may certainly be found where expressly made by the client, but may also be implied from the client's conduct. *Edwards*, 235 Va. at 509; *Grant*, 116 Va. at 648–49. The waiver, like the privilege, belongs to the client and not to the attorney, *Edwards*, 235 Va. at 509.

In deciding whether the privilege has been waived by implication, the court must consider not only the client's intent, but the equities of the situation, as well. *Id.* If intent alone were the touchstone, implied waiver would almost never be found. Rather, the Supreme Court has held that when a client's conduct touches a certain point of disclosure, fairness requires that the privilege shall cease whether he intended that result or not. *Id.* In particular, when a client communicates information to his attorney with the understanding that the information will be revealed to others, the privilege is effectively waived, not only as to the transmitted data but also as to the details underlying that information. *Id.* The details underlying the disclosed information are the communications relating to the date, the document, if any, to be published containing the data, and all preliminary drafts of the document. *Id.* copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege. *Id.* If any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged, must be removed by the reviewing court before the document may be produced. *Id.*

In the instant case, Respondent was the attorney for both Mr. and Mrs. Bowers, each in their individual capacities. As such, confidential communications between Mr. Bowers and Respondent relating exclusively to Mr. Bowers' estate are protected from disclosure by the attorney-client privilege, so long as that privilege was not waived. Petitioner has alleged, however, that Respondent assisted both Mr. and Mrs. Bowers in drafting reciprocal wills, which he claims were executed in November, 1987. To the extent that confidential information concerning Mr. Bowers' estate plans was divulged to Mrs. Bowers, a stranger to the attorney-client relationship, the privilege will have been waived with regard to the disclosed information. Furthermore, under the "doctrine of completeness" outlined above, a sufficiently broad disclosure of privileged information to Mrs. Bowers may actually open the door to a complete waiver of the privilege.

### Written or Oral Agreement to Devise

Accordingly, the court finds that no privilege will apply to any written agreement between Mr. and Mrs. Bowers regarding the alleged reciprocal wills, if in fact such a written agreement exists. The written agreement itself would be immediately discoverable, since Mrs. Bowers would clearly have had access to the document outside of Mr. Bowers' own attorney-client relationship. In addition, Mr. Winn will be required to answer questions relating to any agreement between Mr. and Mrs. Bowers about the alleged reciprocal wills, whether that agreement is oral or written. Again, if Mrs. Bowers was a party to an agreement to make reciprocal wills, whether oral or written, the confidentiality of Mr. Bowers' attorney-client relationship was violated and the privilege waived.

### Reciprocal Will

If Mr. Bowers did execute a will in November, 1987, and if that will conforms to the alleged non-apportionment agreement between Mr. and Mrs. Bowers, the existence of that earlier will may be considered as confirmatory proof that such an agreement was in fact made. *Patton v. Patton*, 201 Va. 705, 714 (1960). As such, it would strongly indicate that Mrs. Bowers was made privy to the drafting and execution of Mr. Bowers' will. In the absence of any affirmative evidence from Respondent that no confidential information was disclosed to Mrs. Bowers, then this court would be forced to conclude that the privilege had been waived regarding the will itself.

To make such a determination, however, requires an examination of such a document by the court, if it in fact exists. Confidential records are routinely filed for *in camera* inspection by the court, *LeMond v. McElroy*, 239 Va. 515, 520 (1990), and this court therefore orders Mr. Winn to produce for review any will executed by Mr. Bowers on or about November 11, 1987. The court also orders Mr. Winn to produce any documents in Mr. Bowers' file related to the execution of such a will, if it exists, as well as any documents pertaining to the alleged reciprocal agreement with Mrs. Bowers. The court reserves decision on Mr. Winn's oral testimony on these matters pending review of whatever documents are produced.