## CIRCUIT COURT OF FAIRFAX COUNTY

Mark Peterson
and Linda Peterson

v.

Fairfax Hospital Systems, Inc., et al.

### Case No. (Law) 111888

BY JUDGE THOMAS D. HORNE

April 11, 1994

The Court has completed its *in camera* review of the documents submitted by the various defendants relative to the crime fraud exception to the attorney-client privilege asserted by plaintiffs. I regret that this review has taken so long. However, such a review was made doubly difficult by the sheer volume of information submitted and the technical nature of much of the material.

The submissions reflect not only the initial investigation of the insulin "incident" but the response of the various defendants to the initiation and conduct of proceedings to recover for alleged acts of medical malpractice. At the center of this response was the suggestion, raised in statements to the public in May of 1988, that the injury sustained by the infant son of the plaintiffs may have resulted from a violation of the security of the neonatology intensive care unit (NICU). A police investigation was initiated, as well as an internal inquiry by members of the hospital staff.

Throughout the lengthy proceedings involved in the underlying malpractice claim, the health care provider continued to maintain its position that a criminal agent may have been responsible for Matthew Peterson's injuries. What was initially conveyed to the public and parents became the

subject of discovery responses and preparation for trial. Plaintiff's counsel relied, in part, on such a theory, as a predicate for recovery in the prior malpractice action.

From a review of the records submitted for *in camera* inspection, as well as those previously considered, it is not unreasonable to infer that the "interloper" theory of liability relied upon by the health care provider in the earlier malpractice action and represented to the parents, public, and police was never suggested by the evidence available to the health care provider. A reasonable argument may be fashioned that, from the outset, the objective evidence suggested that more likely than not, liability was traceable to innocent error by staff of the hospital in the pharmacy or in the intensive care unit itself. Moreover, to the extent such an argument would relate to intentional misconduct warranting police inquiry, the focus of that inquiry would not have involved an "interloper."

This case presents a substantial question concerning the extent to which a court may open to a litigant the files of their adversary in a bitterly contested case which was settled without ever going to trial or before a review panel. The crime fraud exception to the attorney-client privilege recognizes the significance of maintaining the secrecy of client confidences. It is only when the client seeks the advice of the lawyer to further the scheme to defraud that the veil of secrecy is lifted as to the documents and communications used to further the fraud. Reference is made to the earlier letter opinion of the Court for a general discussion of the law relating to the crime fraud exception.

This case is unique in that it has both "public" and "private" aspects. Were the underlying malpractice case to have been conducted as a purely "private" suit between health care provider and patient, the inquiry as to opening of the files of the health care provider and those with whom it has dealt would have been less difficult of determination. As noted in an earlier letter opinion of this Court, a failure to communicate information to the patient relative to their care is malpractice. Accordingly, the settlement of that action at the malpractice cap would have constituted a bar to the instant proceedings. Similarly, the actions of the attorneys in such a case might be subject to review and sanction by the trial court or by a disciplinary panel. Thus, no amount of discovery abuse or nondisclosure alone

would suffice to leverage the plaintiffs' desire to unlock the attorney's confidences in this case.

As noted earlier by the Court, this proceeding is neither an action for malpractice nor a disciplinary proceeding. It is an action for fraud. It suggests that the defendants, acting in concert, either misled or assisted in misleading the plaintiffs into believing that someone, who was a stranger to the health care provider, may have entered the hospital intensive care facility for infants and purposefully injected insulin into the IV line of their baby. Such a report to the parents and the public preceded any notice of claim being filed on behalf of the infant.

If such a representation was made prior to the initiation of any claim for recovery, then the verity of such a statement becomes the talisman of these proceedings. Legal counsel were involved in the investigation of the "incident" almost from the time it came to the attention of the hospital. Indeed, they were part of the team that reviewed the matter of the unauthorized administration of insulin. In the conduct of their review, they cloaked their investigation with extensive security measures. While the use of such security measures, it might be argued, were reasonably necessary under the circumstances, nevertheless, they are a factor to be considered in determining whether plaintiffs have met their burden of a *prima facie* showing of an abuse of the attorney-client privilege.

Later, when a malpractice claim was initiated, the hospital denied assertions on behalf of Matthew Peterson that the intensive care unit lacked adequate security as well as pharmacy error. While the latter complaint was subsumed in the malpractice action, the former is another piece in the mosaic which makes up the instant litigation. An allegation by the infant plaintiff that the NICU lacked adequate security and the denial by the hospital that the security was lacking, without more, assumes a breach of security by an "interloper." While the allegations of the plaintiff constitute alternative theories of recovery based upon statements made prior to the initiation of adversary proceedings, the response by the hospital reflects a reaffirmation of the position taken from the outset of their investigation concerning the possibility of the existence of a criminal agency being involved.

In summary, in applying the standard for a *prima facie* showing of an abuse of the attorney-client privilege, the Court believes that one can reasonably *infer* from the records submitted for review the following scenario: that the hospital, faced with responding to intense inquiry by the relatives of the affected infants and of the media, offered by way of ex-

planation the existence of pharmacy error or the actions of an "interloper"; that the review commenced by the staff of the hospital and their legal counsel had no evidence before it from which they might reasonably conclude that a stranger to the hospital had committed a criminal act against two babies in the NICU; that, to the contrary, the evidence before the staff and their counsel indicated negligence on the part of hospital staff; that the intense security surrounding the investigation by the staff and their counsel was to conceal negligence on the part of the staff of the hospital either in the NICU or in the pharmacy; that the laboratory reports requested and received by the staff of the hospital and their counsel prior to the initiation of adversarial proceedings for alleged malpractice corroborated the existence of pharmacy error; that neither the hospital or its counsel revealed to the parents of the infant plaintiff any information concerning the lack of any evidence of the possible victimization of their child; that the continued existence of the issue of hospital security was the most "defensible" by the health care provider, and therefore, it was an advantage to the hospital to continue to create the illusion of the existence of an "interloper" in the underlying malpractice action not only as such would be more defensible but it would also deflect attention from negligence or possible wrongdoing on behalf of hospital staff; and that during the course of the investigation, litigation, and settlement of the malpractice claim, the instant defendants, or their agents, participated in the continuing dissemination of misinformation to the parents concerning the existence of an "interloper," a theory fraudulently introduced by the health care provider or its agents prior to the initiation of adversarial proceedings.

Thus, left unrebutted, such inferences subject the Defendants to the risk of nonpersuasion. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir. 1976).

If disclosure is to be ordered, then are there to be limits on such disclosure? The Court finds that discovery of materials protected by the attorney-client communicative and mental impression privilege has limitations in this case. First, the Court cannot conclude that any materials presented for review which postdate the settlement of the underlying malpractice action are subject to review. Both a review of the *in camera* documents and of those previously submitted does not suggest that plaintiffs have met the test of a *prima facie* showing necessary to disclosure in this regard. Second, the Court does not find that any of the litigation materials, including any memoranda of law, letters, reports, inter-office memos, or drafts of pleadings and discovery responses not related to the

issue of who caused the unauthorized administration of insulin are subject to disclosure. Except as to the issue of agency in the administration of the insulin, such documents represent ordinary trial preparation, including discovery, settlement, and trial issues. Third, the Court will not order disclosure of any investigative reports, protected by the attorney-client privilege, not related to the unauthorized administration of insulin.

The Court has attempted to identify by Bates Number the documents to be produced under this opinion. However, because much of the material to be produced is interwoven with other information still to be protected, the Court will give defense counsel the opportunity to redact the documents, consistent with this opinion, before they are turned over to plaintiffs' counsel. This redaction process is to be completed no later than May 1, 1994; otherwise, the Court will be forced to turn over all documents to plaintiffs' counsel. Reference is made to the prior opinion letter of this Court with respect to those materials not covered by the attorney-client privilege. The instant opinion is concerned only with those materials to which the "crime-fraud" exception to non-disclosure is applicable.

Insofar as the Smith infant is concerned, this opinion and the previous opinion with respect to disclosure of materials not subject to the "crime-fraud" will apply.

The disclosure of these documents shall be pursuant to a protective order of this Court. Access, absent further order of the Court, shall be to counsel for the Plaintiff and their staff. Review shall be conducted in the office of the Clerk of the Circuit Court of Loudoun County. Copies of documents may be made at the expense of counsel.

### August 24, 1994

Defendants Fairfax Hospital by and through INOVA Hospitals and the INOVA Health System Foundation have requested that the Court grant them both summary judgment and partial summary judgment. The Court finds that an award of summary judgment or partial summary judgment at this stage of the proceedings is inappropriate.

While recovery for fraud is conditioned upon some showing of pecuniary loss, the losses particularized and claims made by the plaintiffs involve factual considerations which are not ripe for adjudication at this time. See, *Lloyd v. Smith*, 150 Va. 132 (1928); Rule 3:18, Rules of the Supreme Court of Virginia. Absent some showing of pecuniary loss at trial, plaintiffs may not recover for any attendant emotional harm. *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343 (1982).

Mr. Hirschkop shall draw the Order denying the Motions for Summary Judgment and Partial Summary Judgment, to which Defendant may note their exceptions.

The Court agrees with the position taken by the Defendants as to the requirement of Rule 3:14. A copy of the amended motion for judgment should accompany the request to amend and add additional parties *prior* to the Court's taking action on the motion. Accordingly, the Court will withhold action on the motion until such time as the Amended Motion for Judgment is forwarded for review and further comment by counsel. Given the limited time which remains prior to the scheduled trial of this case, counsel for the plaintiffs shall file a copy of the Amended Motion for Judgment on or before September 9, 1994. Any additional comments by counsel shall be filed within three working days thereafter.

### January 9, 1995

This cause is before the Court on Defendants' Motion to Compel Information Related to Statute of Limitations and Damages Issues and to Preclude Testimony of Plaintiffs' Counsel.

The defendants have moved for an Order (1) overruling objections to written discovery based upon claimed attorney-client privilege and the work product doctrine; (2) overruling instructions not to answer; (3) requiring the production of non-opinion work product documents; (4) requiring, on a finding of waiver, the production of opinion work product and privileged documents relating to the knowledge of plaintiffs of when their cause of action arose or of facts related thereto or concerning their damages claims where such damages allegedly arise from the underlying litigation; (5) requiring supplemental answers to interrogatories to provide all facts known to counsel or the Petersons, notwithstanding claims of privilege and work product that have been waived; and (6) precluding plaintiffs' counsel or his employees or former employees from testifying directly or indirectly.

The Court will, at this time, overrule objections to written discovery based on attorney-client privilege or work-product doctrine. The Court will overrule counsel's instructions not to answer during discovery where those instructions are based on attorney-client privilege or the work-product doctrine. The Court will also order that plaintiffs provide supplemental answers to interrogatories to provide all facts known to counsel or the Petersons, notwithstanding claims of privilege and work-product. Furthermore, the Court will order the production of non-opinion work product

documents and the production of privileged documents relating to the knowledge of plaintiffs of when their cause of action arose or of facts related thereto or concerning their damages claims where such damages allegedly arise from the underlying litigation.

The Court finds, for the reasons stated hereinafter, that the discovery sought by defendants overcomes work-product protections and that the plaintiff has impliedly waived the attorney-client privilege.

The protections of the work-product doctrine are set out in Rule 4:1 of the Rules of Supreme Court of Virginia. The requirements for discovering things prepared in anticipation of litigation are a substantial need for the materials relevant to the issue at hand and undue hardship that would result from attempting to obtain the substantial equivalent of the materials by other means.

The Court finds that all of the materials sought by the defendants in this Motion are relevant to the issues at hand. Furthermore, the Court finds that there is a substantial need for facts and non-opinion work product documents relating to the issues of reasonable reliance, estoppel, and the damages claimed. Obtaining the materials sought in this Motion by other means would be impossible, for it is the plaintiffs and plaintiffs' counsel who possess the knowledge sought. Discovery of the facts related to those issues are not prevented in this case by the work-product doctrine. Any opinion work-product material maintains its privilege from discovery. *Specter v. Hartford Fire Ins. Co.*, 1 Va. Cir. 199 (1980).

Where fairness so requires, an implied waiver of the attorney-client privilege may be found by the Court. *Commonwealth v. Edwards*, 235 Va. 499, 370 S.E.2d 296 (1988). Indeed, the Supreme Court of Virginia long ago found implied waiver of attorney-client privilege based on the pleadings of a plaintiff. *Grant v. Harris*, 116 Va. 642, 82 S.E. 718 (1914).

The plaintiffs are seeking damages for higher litigation costs spent as a result of the alleged fraud. The Court is of the belief that plaintiffs' claim for costs in the underlying litigation draws into issue the knowledge of counsel and requires, in fairness, that such filing is an implied waiver of the attorney-client privilege. *See, Edwards, supra; Grant, supra.*

The plaintiffs' Amended Motion for Judgment also includes allegations of misrepresentation by the defendants in the previous case and allegations that plaintiffs relied on these misrepresentations to their detriment. To whatever extent counsel may have knowledge pertaining to detrimental reliance by the plaintiffs based on alleged misrepresentation by the defendants, it is discoverable. The inclusion of these allegations serve as an

implied waiver of attorney-client privilege on matters pertinent to the allegations.

The Court is satisfied that the law propounded on the issue of attorney-client privilege and reasonable reliance is applicable to this case. *See, Chicago Title Ins. Co. v. Superior Court,* 174 Cal. App. 3d 1142, 220 Cal. Rptr. 507 (1985); *United Jersey Bank v. Wolosoff,* 483 A.2d 821 (N.J. Super. Ct. App. Div. 1984). Since the plaintiffs have brought the issue into the case, the Court believes that in fairness to the defendants, the attorney-client privilege should be deemed waived.

Similarly, where the plaintiffs rely on estoppel to combat a plea of statute of limitations, fairness requires that the attorney-client privilege be deemed waived. The Court is of the opinion that what counsel knows and when he knew it are issues dragged into the case by invoking the defense of estoppel, and "there is a good-faith basis for believing that invasion of the attorney-client privilege would shed light on the validity of such claim of estoppel." *Connell v. Bernstein-Macaulay, Inc.,* 407 F. Supp. 420, 423 (S.D. N.Y. 1976). The clock begins to run in fraud on the two-year statute of limitations cases when the fraud is discovered, or should have been discovered by the exercise of due diligence. § 8.01-243(A); § 8.01-249(1), Code of Virginia, 1950, as amended. The defendants maintain that the plaintiffs were on inquiry notice of the possibility of fraudulent actions in the previous case more than two years before this action was filed. Counsel's knowledge, or lack thereof, is relevant, probative, and discoverable.

The defendant's motion precluding plaintiffs' counsel or his employees or former employees from testifying directly or indirectly is denied.

In light of the Court's ruling, Mr. Hirschkop shall file the appropriate responses consistent with this opinion within twenty-one days of the date of this letter opinion.

## July 19, 1995

The Court has carefully considered the law and the evidence relevant to the instant Plea in Bar of the Statute of Limitations filed by Fairfax Hospital and INOVA Health System Foundation. Defendants suggest that the alleged fraud which forms the basis of this claim was known by the Plaintiffs, or reasonably should have been discovered by them, more than two years next preceding the filing of the instant action and is thus time barred in accordance with the provisions of §§ 8.01-243(A), 8.01-249, Code of Virginia, which provide in pertinent part:

> every action for damages resulting from fraud shall be brought within two years after the cause of action accrues.
>
> The cause of action . . . shall be deemed to accrue . . . (1) [i]n actions for fraud . . . when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered.

The Court will not restate the nature of the fraud alleged in this case but will refer to the earlier letter opinions of the Court for a more detailed description of the allegations and damages claimed, which letter opinions are incorporated herein and are to be read as a part hereof.

This Court disagrees with the position of the Defendants and will overrule the Plea in Bar.

As pleaded, the alleged fraud of the Defendants occurred in June of 1988. The instant action was filed in January of 1992. Plaintiffs have borne their burden of proving they neither knew of such fraud nor failed to exercise due diligence in pursuing their claim without discovering such fraud more than two years preceding the initiation of this cause. *Hughes v. Foley*, 203 Va. 904 (1952) (see authorities cited therein). As the Court noted in *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140 (1990):

> [t]he language "by the exercise of due diligence reasonably should have been discovered," as used in Code § 8.01-249, means "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." at 144 [citations omitted].

Plaintiffs in the instant case, while challenging the alleged contention of the Defendants that a third person had injured their infant son while hospitalized, were not possessed of such knowledge as might put them on notice that they should, "consider pursuing their rights . . ." against the hospital in an action for fraudulent misrepresentation. *LaVay Corp. v. Dominion Federal Savings and Loan Association*, 830 F.2d 522, 527 (4th Cir. 1987).

Plaintiffs should not be charged with knowledge of facts they have in earnest sought to discover, but cannot, nor for their counsel's hypotheticodeduction in other litigation, for which they have no factual predicate.

The record of past proceedings leading to the initiation of the instant action does not reveal the clear recantations and contradictions which

Defendants suggest would lead to knowledge and notice of the alleged fraud committed in June of 1988. Testimony given in the review panel proceedings and underlying malpractice action prior to the spring of 1991 did not serve as notice that what had been told Plaintiffs concerning the involvement of a criminal agent in the injuries to their son was fraudulent. It was not until that spring, within the two years next preceding the initiation of the instant action, that such knowledge or constructive knowledge may be charged to the Plaintiffs. Until that time, the record reveals ambiguities, memory lapses, and a bitter and hotly-contested discovery dispute. It does not contain facts which might belie the alleged earlier representations made by the hospital so as to constitute actual or inquiry notice of fraud.

When considered as a whole, the evidence reveals that neither the Petersons nor their counsel were possessed of sufficient facts from which it may be concluded that they had discovered, or, in the exercise of due diligence, should have discovered, actual fraud and misrepresentation as would bar them from proceeding further in this action.