Present:  Carrico, C.J., Hassell, Keenan, Koontz, Kinser,
and Lemons, JJ., and Compton, S.J.

HOMESIDE LENDING, INC.

v. Record No. 000590    OPINION BY JUSTICE CYNTHIA D. KINSER
                                           January 12, 2001
UNIT OWNERS ASSOCIATION OF
ANTIETAM SQUARE CONDOMINIUM, ET AL.

          FROM THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY
                    LeRoy F. Millette, Jr., Judge

     In this appeal, we address the question whether, under

Code § 55-79.84(A) and (E), court costs, attorneys' fees,

and repair expenses incurred by a condominium unit owners'

association in instituting and maintaining a suit to

enforce liens for unpaid assessments, as well as the fees

of a special commissioner, have priority over payment of

sums remaining due on a note secured by a first deed of

trust.  Because we conclude that Code § 55-79.84(A)

establishes the priority of liens, we will reverse that

part of the judgment of the circuit court directing payment

of the costs and other reimbursements allowed under Code

§ 55-79.84(E) before payment of the note secured by the

first deed of trust.

     The appellee, Unit Owners Association of Antietam

Square Condominium (Association), filed a bill of complaint

pursuant to Code § 55-79.84 to enforce memoranda of liens

and a judgment lien for unpaid condominium assessments.

The Association named as defendants the owners of record of the residence at 2734 Bordeaux Place in Woodbridge, also known as Unit 25-B-3 in Phase VI, Block 25 of Antietam Square Condominium (the subject property); BancPlus Mortgage Corporation (BancPlus), appellant's predecessor-in-interest and the holder of a note secured by a purchase money deed of trust on the subject property; the trustees under that deed of trust; and a parks and recreation association that had two judgment liens against the subject property.

In response, BancPlus and the trustees filed an answer, asserting that the deed of trust securing payment of the note was a first lien against the subject property and therefore had priority over all claims asserted by the Association. BancPlus asked that no order be entered adverse to its interests; that the circuit court sustain the priority of its lien as to the subject property; and that any sale of the subject property be made subject to the lien of BancPlus, or in the alternative, that BancPlus be paid in full.[1]

---

[1] The owners of the subject property, and the parks and recreation association also filed answers. However, after the subject property was sold, the circuit court entered a decree dismissing those parties.

On motion of the Association, the court entered a decree appointing a commissioner in chancery for the purpose of determining, inter alia, the amounts of the liens on the subject property and the priority of those liens. After conducting a hearing, the commissioner filed a report, stating that the lien of the deed of trust held by BancPlus was second only to the lien of any outstanding real estate taxes owed on the subject property. The commissioner in chancery further reported that the perfected liens and judgment liens for assessments filed by the Association were next in priority after the deed of trust. The circuit court subsequently confirmed the report of the commissioner in chancery and appointed a special commissioner to sell the subject property.

A few months later, the appellant, HomeSide Lending, Inc. (HomeSide), was substituted as a party in the place of BancPlus since HomeSide was the current beneficiary under the deed of trust.[2] HomeSide had already commenced foreclosure proceedings on the subject property because payment on the note secured by the deed of trust was in default. Upon receipt of notice of HomeSide's impending foreclosure sale, the Association filed a motion seeking a

_____

[2] A substitute trustee under the deed of trust was also named as a party to the proceedings.

temporary restraining order to prevent HomeSide from proceeding with the sale.  HomeSide decided to postpone (and later canceled) its scheduled foreclosure sale. However, when HomeSide again advertised the subject property for foreclosure, the Association renewed its motion for a temporary restraining order, and the circuit court granted the motion.  The court enjoined HomeSide from proceeding with a foreclosure sale on the subject property and directed that the injunction remain in effect until the court entered a final decree in the cause and allocated the proceeds from the prospective sale of the subject property.

Approximately a month later, the special commissioner of sale moved the court to accept or reject a purchase offer for the subject property.  The circuit court approved an amended purchase offer in the amount of $43,900 and directed that the liens and encumbrances of record on the subject property be transferred to the sale proceeds.[3]

---

[3] The circuit court also fixed the amount of certain seller's charges in connection with the sale, leaving the sum of $38,183.13 as the net proceeds from the sale of the subject property.  These seller's charges included a real estate commission in the amount of 6% of the sale price, the grantor's tax, the purchaser's costs in the amount of 6% of the sale price, pro-rata and delinquent real estate taxes, and a settlement attorney's fee in the amount of $250.

Nine months later, the special commissioner of sale filed the following proposed scheme for distributing the net sale proceeds in the amount of $38,183.13:

1. $8,880 to the special commissioner of sale;

2. $19,463.50 to the Association for attorney's fees incurred in instituting and maintaining this suit;

3. $4,010.84 to the Association for its costs incurred in the suit;

4. $4,111.34 to the Association for repairs undertaken in order to market the subject property; and

5. The balance of approximately $1,717.45, plus all accrued interest, to HomeSide.

HomeSide objected to the proposed distribution. It alleged that, as of December 31, 1999, the amount owed to HomeSide on the note secured by the deed of trust on the subject property was $72,038.14, exclusive of attorney's fees and costs. HomeSide asked the court to reject the proposed scheme of distribution and to award HomeSide the entire sum of $38,183.13 (plus accrued interest) in partial satisfaction of its deed of trust.

After conducting a hearing on HomeSide's objection, the circuit court entered a decree disbursing the sale proceeds in accordance with the proposed scheme of distribution filed by the special commissioner of sale. The court reasoned that the language used in Code § 55-79.84 "means that, without limitation, the people who . . .

5

brought the suit, incurred the attorney's fees, [and] incurred the cost of the special commissioner are entitled to . . . reimbursement for costs and attorney's fees."  We awarded HomeSide this appeal.

The question on appeal is whether the circuit court erred in approving a distribution of the sale proceeds that gave priority to the attorney's fees, costs, and repair expenses incurred by the Association in instituting and maintaining this suit and in selling the property, and also to the fees of the special commissioner of sale, over the sums unpaid on HomeSide's deed of trust.  We believe that the plain meaning of the terms used in Code § 55-79.84(A) and (E) answer this question.[4]  Thus, in interpreting those subsections, we look no further than the words utilized by the General Assembly.  Supinger v. Stakes, 255 Va. 198, 205-06, 495 S.E.2d 813, 817 (1998) (citing City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)).  "We must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute."  Barr v. Town & Country

---

[4] The General Assembly amended Code § 55-79.84 in 2000. Those amendments are not applicable to this suit. Therefore, we will cite to the version of Code § 55-79.84 in existence before the 2000 amendments.

Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). "The manifest intention of the legislature, clearly disclosed by its language, must be applied." Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944).

Subsection (A) of Code § 55-79.84 provides that a condominium unit owners' association "shall have a lien on every condominium unit for unpaid assessments levied against that condominium unit . . . ." That subsection further states that any such lien,

> once perfected, shall be prior to all other liens and encumbrances except (i) real estate tax liens on that condominium unit, (ii) liens and encumbrances recorded prior to the recordation of the declaration, and (iii) sums unpaid on any first mortgages or first deeds of trust recorded prior to the perfection of said lien for assessments and securing institutional lenders.

As applicable at the time of these events, subsection (E) provided that "[t]he judgment or decree in an action brought pursuant to this section shall include, without limitation, reimbursement for costs and attorneys' fees, together with interest at the maximum lawful rate for the sums secured by the lien . . . ."

Contrary to the circuit court's holding and the argument of the Association, subsection (E) of Code § 55-79.84 did not establish an order of priority for the disbursement of proceeds from the sale of the subject

7

property.  That provision merely directed that any judgment or decree entered in an action brought pursuant to Code § 55-79.84 to enforce a lien for unpaid condominium assessments must include provisions addressing reimbursement for costs and attorneys' fees, and also interest on the sums secured by such lien.  The additional requirement that the enumerated reimbursements be "without limitation" did not give priority to the payment of those reimbursements over the payment of other liens or encumbrances.  In other words, subsection (E) allowed a unit owners' condominium association to recover more than just the unpaid assessments when it brought a suit to enforce its lien, but nothing in that subsection addressed the priority of those allowed reimbursements in relation to other liens.

Instead, the priority of liens is governed by subsection (A) of § 55-79.84.  That provision gives the perfected lien of a condominium unit owners' association for unpaid assessments priority over other liens except three specific types of liens, the third of which is relevant to this suit, i.e., "sums unpaid on any first mortgages or first deeds of trust recorded prior to the perfection of said lien for assessments."  Code § 55-79.84(A).  Thus, pursuant to that section, HomeSide's deed

of trust on the subject property has priority over not only the lien of the Association for unpaid assessments but also the Association's attorneys' fees, costs, and interest on the sums secured by its lien. This was the conclusion reached by the commissioner in chancery who reported that HomeSide's lien was second in priority only to any outstanding real estate taxes.

Therefore, we conclude that the circuit court erred in directing that the proceeds from the sale of the subject property be disbursed to the Association for its attorneys' fees, costs, and repair expenses before payment to HomeSide on the note secured by its first deed of trust. Hence, we will reverse that portion of the judgment of the circuit court and remand the case to the court for entry of an order of distribution in accordance with this opinion.

However, we will affirm the judgment of the circuit court with respect to the fees of the special commissioner of sale. The court appointed the special commissioner pursuant to the provisions of Code § 8.01-96. In pertinent part, that section states, "In decreeing a sale under any provisions of law, the court may . . . appoint one or more special commissioners to make such a sale." The amount of a special commissioner's fees under a decree for sale of property is fixed by statute. Under Code § 8.01-109, a

court may allow "a commission of five percent on amounts up to and including $100,000, and two percent on all amounts above $100,000." That section further specifies that, for the purposes of determining the commission, "each piece of property so sold shall constitute a separate sale, even though more than one piece of property is sold under the same decree." The sale of the subject property in this suit was a judicial sale. See Staples v. Somers, 196 Va. 581, 587-88, 84 S.E.2d 523, 526-27 (1954) (discussing incidents of judicial sale). By fixing the amount of the commission in a judicial sale, we believe that the General Assembly intended that such commission be paid from the proceeds of that sale. Cf. Code § 8.01-618.1 (paying fee out of fund in court to special commissioner for making report under Code § 8.01-617); Citizens Nat'l Bank of Charlottesville v. Manoni, 76 Va. 802, 808 (1882) (when property sold under decree of sale, taxed costs properly paid from proceeds). Thus, the circuit court properly directed payment of the fees of the special commissioner from the sale proceeds before any distribution of the funds to HomeSide.

For these reasons, we will affirm in part, and reverse in part, the judgment of the circuit court and remand for further proceedings consistent with this opinion.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded</u>.