# CIRCUIT COURT OF SOUTHAMPTON COUNTY

Commonwealth of Virginia

v.

Bobby C. Evans, Jr.

May 7, 2001

Case Nos. CR-01-26 to CR-01-37

BY JUDGE D. ARTHUR KELSEY

The Commonwealth accuses Bobby Evans of six counts of armed robbery and six counts of use of a firearm in the commission of a felony.[1] In its pretrial motion *in limine,* the Commonwealth seeks permission to use at trial a written statement provided to the prosecution by the defendant's former lawyer during unsuccessful plea negotiations. For the following reasons, the Court grants the Commonwealth's motion.

The defendant's former attorney, Sheldon C. Worrell, Jr., entered into negotiations with the Commonwealth's Attorney, Richard C. Grizzard, in hopes of obtaining a favorable plea agreement for the defendant. The negotiations turned, in part, on the defendant's ability to provide inculpatory testimony concerning another defendant in a related case. During these negotiations, Grizzard requested that Worrell provide a written statement from his client describing his knowledge of the facts of the offense. Worrell

---

[1] Richard C. Grizzard, Commonwealth's Attorney for Southampton County, represents the Commonwealth. Michael Rosenberg represents the defendant.

responded to this request with a typed, written statement of facts purporting to be the verbatim testimony the defendant would present at trial if he took the stand. With his client's alleged consent, Worrell provided this statement to Grizzard.

The plea negotiations eventually collapsed and the parties continued their preparations for trial. The defendant thereafter filed a pretrial notice of alibi which, as required by Virginia Supreme Court Rule 3A:11(c)(2), identified the "place at which he claims to have been at the time of the commission of the alleged offense." This alibi notice, the Commonwealth contends, directly contradicts the defendant's written statement previously provided during the plea negotiations.

Given the contradiction between the defendant's written statement and the alibi notice, the Commonwealth filed its motion *in limine* seeking a ruling on the admissibility of the statement at trial. The defendant objects, contending that (a) Virginia Supreme Court Rule 3A:8(c)(5) forbids the admission of the written statement at trial, and (b) the attorney-client privilege also protects the statement from further disclosure. The Court finds neither objection persuasive.

On the first point, we begin with the proposition that a trial court should permit a litigant "to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility." *Tarmac Mid-Atlantic v. Smiley Block Co.*, 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995) (citations omitted). The defendant concedes that no Virginia case addresses the question whether factual statements made by a defendant during unsuccessful plea negotiations can be used against him. With few exceptions, the federal cases addressing this subject generally hold that such statements cannot be admitted at trial for any purpose, including impeachment or rebuttal. *See, e.g., United States v. Lawsen*, 683 F.2d 688, 692-93 (2d Cir. 1982); *United States v. Bridges*, 46 F. Supp. 2d 462, 464-65 (E.D. Va. 1999); *see also* Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure*, § 5349, at 416 (1980) (exclusion applies to impeachment); ABA Criminal Justice Pleas of Guilty Standards, 14-2.2, at 98 (3d ed. 1999) (The federal rules do not "go as far as to authorize the later use for impeachment purposes of statements made while entering into a plea that is withdrawn.").

The federal cases, however, involve an interpretation of Federal Rule of Criminal Procedure 11(e)(6) and its companion Federal Rule of Evidence 410. Both rules provide:

*Inadmissibility of Pleas, Plea Discussions, and Related Statements.* Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: (A) a plea of guilty which was later withdrawn; (B) a plea of nolo contendere; (C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

*Id.* (emphasis added). Given the clarity of the rule of exclusion — the evidence "is not, in any civil or criminal proceeding, admissible against the defendant" — good reason exists for the uniform interpretation of the federal courts.

The defendant points out that the analogous Virginia Supreme Court Rule 3A:8(c)(5), with one critical exception, uses similar language:

Except as otherwise provided by law, evidence of a plea of guilty later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged, or any other crime, or of statements made in connection with and relevant to any of the foregoing pleas or offers, *is not admissible in the case-in-chief in any civil or criminal proceeding* against the person who made the plea or offer. But evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, a plea of nolo contendere, or any offer to plead guilty or nolo contendere to the crime charged or to any other crime, is admissible in any criminal proceeding for perjury or false statement, if the statement was made by the defendant under oath and on the record. In the event that a plea of guilty or a plea of nolo contendere is withdrawn in accordance with this Rule, the judge having received the plea shall take no further part in the trial of the case, unless the parties agree otherwise.

*Id.* (emphasis added).

When interpreting statutes, the Virginia Supreme Court assumes the "legislature chose, with care, the words it used" in the statute being interpreted. *Homeside Lending, Inc. v. Unit Owners Ass'n*, 261 Va. 161, 166, 540 S.E.2d 894, 896 (2001). Every part of a law is "presumed to have some effect" and no words should be considered "superfluous." *Melanson v. Commonwealth*, 261 Va. 178, 183, 539 S.E.2d 433, 435 (2001) (citation omitted). The same canons hold true for the Virginia Supreme Court's own procedural rules, which it promulgates with the same force and effect as legislative enactments.[2] *See Hanson v. Commonwealth*, 29 Va. App. 69, 77, 509 S.E.2d 543, 546 (1999) ("familiar rules of statutory construction are instructive and provide guidance in the interpretation of court-adopted rules"); *see also Business Guides v. Chromatic Comm. Enterprises*, 498 U.S. 533, 540-41 (1991) ("As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous."). These interpretative canons underscore the need to give effect to the plain meaning of Rule 3A:8(c)(5) and to assume the original intent underlying the caveat rested upon a principled policy basis.

Unlike the parallel federal rules, the plain meaning of Rule 3A:8(c)(5) only precludes the admission of the statement in the "case-in-chief" against the defendant at trial. Thus, the prosecution may use the statement against the defendant as impeachment on cross-examination or during the rebuttal phase of the trial. These non-case-in-chief uses remain subject to the ordinary principles policing the admission of evidence generally, such as those governing authentication, foundation, impeachment, and rebuttal scope. But if the statement passes those tests, it cannot be excluded by the plain meaning of Rule 3A:8(c)(5).[3]

Though conceding that the literal text of Rule 3A:8(c)(5) does not preclude the Commonwealth's intended use of his statement, the defendant argues that such a result could not possibly have been intended by the drafters.

---

[2] The Virginia Supreme Court has "the authority to make rules governing the course of appeals and the practice and procedures to be used in the courts of the Commonwealth, but such rules shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly." Va. Const., art. 6, § 5. Nothing in the Virginia Code addresses the issue taken up by Rule 3A:8(c)(5).

[3] The Virginia case-in-chief caveat appeared in the first version of Rule 3A:8(c)(5) at the time of its adoption by the Virginia Supreme Court on June 15, 1971, and its effective date of January 1, 1972. The caveat remained during the 1984 and 2001 amendments to Rule 3A:8(c)(5).

Having borrowed so heavily from the Federal Rules, the defendant argues, the drafters likely intended the settled federal interpretation to follow along. The Court cannot concur either in the defendant's reasoning or in his view of the unfairness of a contrary interpretation.

The case-in-chief caveat stands in stark contrast to the inflexible language of the Federal Rules 11(e)(6) and 410.[4] And the caveat does not create, as the defendant implies, an absurdity rendering unusable the plain meaning of Rule 3A:8(c)(5). To the contrary, the caveat reflects a commendable effort at balancing competing policy goals. It encourages plea negotiations and provides special protection for the defendant in the event the negotiations fall apart. But this protection does not extend so far as to permit the defendant to take the stand and assert a completely different story than that previously given to the prosecution.

If the statements are truly contradictory, the Commonwealth has ample justification to assert that the defendant has likely lied to someone: either to the prosecutor during the plea negotiations or to the jury at trial. Permitting impeachment, under these circumstances, rests on sound footing. *See generally People v. Crow*, 28 Cal. App. 4th 440, 452, 33 Cal. Rptr. 2d 624, 631 (1994) (statements during plea bargaining admissible as impeachment); *State v. Hansen*, 194 Mont. 197, 204-05, 633 P.2d 1202, 1207 (1981). The United States Supreme Court made exactly that point when it rejected the argument that prosecutors could not obtain waivers of the federal evidentiary bar:

> The admission of plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts. *Cf. Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (once a defendant decides to testify, he may be required to face impeachment on cross-examination, which furthers the "function of the courts of justice to ascertain the truth." . . . Under any view of the evidence, the defendant has made a false statement, either to the prosecutor during the plea discussion or to the jury at trial; making the jury aware of the

---

[4]    Moreover, as for the use of federal precedents generally, the Virginia Supreme Court has made plain that "it is the responsibility of this Court to interpret our own Rules regarding pretrial procedures for the parties in the courts of this Commonwealth. And, even though the federal courts' interpretations of their rules in some instances may be informative, those interpretations are not binding on this Court's interpretation of our Rules." *Brown v. Black*, 260 Va. 305, 311, 534 S.E.2d 727, 730 (2000).

inconsistency will tend to increase the reliability of the verdict without risking institutional harm to the federal courts.

*United States v. Mezzanatto*, 513 U.S. 196, 204-05 (1995). That so, the drafters of Rule 3A:8(c)(5) can hardly be criticized for including language that, if read literally, would render the plain meaning of the text absurd. *Cf.* Wright & Graham, *supra* § 5349, at 416 (the "common law" recognized impeachment as a permissible use of such statements). By analogy, consider the similar treatment given to *Miranda* violations. Voluntary statements taken in violation of the prophylactic *Miranda* rules may not be used in the prosecution's case in chief. But the trial court may admit the statements to impeach conflicting testimony given by the defendant. *See United States v. Havens*, 446 U.S. 620, 626 (1980); *Oregon v. Hass*, 420 U.S. 714 (1975); *Harris v. New York*, 401 U.S. 222 (1971). The same is true of statements by a defendant or his counsel at a pretrial suppression hearing. They cannot be used in the case-in-chief, but can be offered "to impeach the defendant at trial." Charles E. Friend, *The Law of Evidence in Virginia* § 4-5(i), at 123 (5th ed. 1999) (citing *Hall v. Commonwealth*, 16 Va. App. 779, 433 S.E.2d 489 (1993)).

For these reasons, the Court grants the Commonwealth's motion *in limine* on the Rule 3A:8(c)(5) issue. Nothing in that Rule precludes the use of the written statement as impeachment evidence, assuming the prosecution complies with the principles governing this exercise. *See* Va. Code Ann. § 19.2-268.1 (Michie 2000). Nor does the Rule forbid the introduction of the statement as rebuttal evidence, so long as the statement can be fairly characterized as within the scope of rebuttal. *See Byrd v. Commonwealth*, 30 Va. App. 371, 374, n. 1, 517 S.E.2d 243, 244, n. 1 (1999) ("The admissibility of rebuttal evidence is generally restricted in scope to refuting matters brought out by its proponent's adversary."); Charles E. Friend, *The Law of Evidence in Virginia* § 1-4(e), at 12 (5th ed. 1999) (Rebuttal is "solely" limited to a "reply to defendant's case.").

The second issue raised by the motion *in limine* involves basic principles of the attorney-client privilege. Confidential communications between attorney and client "are privileged from disclosure, even for the purpose of administering justice." *Commonwealth v. Edwards*, 235 Va. 499, 508-10, 370 S.E.2d 296, 301 (1988) (quoting *Grant v. Harris*, 116 Va. 642, 648, 82 S.E. 718, 719 (1914)). The privilege, however, "is an obstacle to investigation of the truth, and should be strictly construed." *Id.* (citing 8 Wigmore, *Evidence* § 2291 at 554 (McNaughton rev. 1961)). The privilege may be expressly waived by the client or implicitly waived as a result of the client's conduct.

The proponent of the privilege has the burden to establish that the client did not waive the privilege. *Id.* Moreover, when "the client has waived the privilege, the attorney must testify as to the communication, whether the attorney wishes to or not." Friend, *supra* § 7-3, at 223.

While the privilege may extend, under some circumstances, to communications among co-defendants and their attorneys when engaged in consultation about their joint defense, *see Chahoon v. Commonwealth*, 62 Va. (21 Gratt.) 822, 836-42 (1871); *Hicks v. Commonwealth*, 17 Va. App. 535, 537, 439 S.E.2d 414, 415 (1994), the privilege cannot possibly apply to communications between a defendant and a Commonwealth's Attorney during an ongoing criminal prosecution. And when a client provides information to his attorney "with the understanding that the information will be revealed to others, the disclosure to others effectively waives the privilege not only to the transmitted data but also as to the details underlying that information." *See Edwards*, 235 Va. at 509-10, 370 S.E.2d at 301.

For these reasons, the attorney-client privilege does not protect the statement attributable to the defendant if he gave express or implied authorization to his attorney to turn the statement over to the prosecutor. Because the privilege belongs not to the attorney but to the client, *see* Thomas E. Spahn, *Virginia's Attorney-Client Privilege and Work Product*, § 7.201, at 168 (4th ed. 1999), the Court will make a factual determination at trial on the authorization issue before permitting the statement into evidence.

Nothing in Rule 3A:8(c)(5) or in the attorney-client privilege precludes the Commonwealth's intended use of the defendant's written statement for impeachment or as substantive evidence in the rebuttal case. The Court will reserve until trial whether the Commonwealth satisfies the ordinary rules governing foundation, authentication, impeachment, and scope of rebuttal. It is so ordered.