COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Athey and Callins
Argued by videoconference

SHADDY FOUAD MOUMEN

MEMORANDUM OPINION* BY
v.        Record No. 0132-24-4          JUDGE RANDOLPH A. BEALES
                                         MAY 6, 2025

MELANIE JEANNETTE KHOURY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

> Mikhail "Misha" Lopez (Lee Lopez Law, PLLC, on briefs), for
> appellant.
>
> John E. Byrnes (Kelly Byrnes Danker & Luu, PLLC, on brief), for
> appellee.

Shaddy Fouad Moumen appeals the judgment of the Circuit Court of Fairfax County

finding him in civil contempt for violating a family abuse protective order, entering a new

protective order, and awarding Melanie Jeannette Khoury her attorney fees and costs in the

circuit court. He challenges the circuit court's limits on his cross-examination of Khoury, the

sufficiency of the evidence to support the circuit court's contempt finding, and the circuit court's

authority to issue a new protective order under Code § 16.1-253.2. Moumen also asserts that

Khoury wrongly used privileged communications that were captured in jail calls.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND[1]

Under settled appellate principles, we state the facts in the light most favorable to Khoury, the prevailing party in the circuit court. "On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" *Bedell v. Price*, 70 Va. App. 497, 500-01 (2019) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 40 (2014)).

Moumen and Khoury were divorced in 2021. On July 26, 2022, the Fairfax County Juvenile and Domestic Relations District Court (the "JDR court") entered a family abuse protective order directing that Moumen "shall have no contact of any kind with" Khoury, except for "civil communication via text and email regarding the parties' children."[2] The JDR court's protective order also required that Moumen "must not retain, persuade, or otherwise induce any other person to do to Petitioner [Khoury], on his behalf, anything Respondent [Moumen] is prohibited from doing by virtue of this Order. Without limitation, Respondent must not retain any Private Investigator to follow or surveil Petitioner." Less than a week after the JDR court entered the protective order, Moumen and his girlfriend, Marcella, discussed the order's restrictions during a recorded jail call. Moumen admitted that he was "not allowed to do any surveillance of Melanie [Khoury]. That is part of my protective order for the next two years." However, Moumen agreed with Marcella when she said that she could "create my own investigation if I wanted to of her [Khoury]." Moumen also maintained that he could "surveil my kids. I am allowed to do that."

---

[1] The record in this case was sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023).

[2] At the time, Moumen was incarcerated on charges of stalking, two counts of violating a preliminary protective order, and illegally placing a tracking device on Khoury's car. Moumen received a deferred disposition on the stalking and illegally using a tracking device charges, which were later dismissed. The Commonwealth nolle prossed the charges for violating a preliminary protective order.

Meanwhile, Khoury (a real estate agent with Keller Williams) had been planning a webinar on August 16, 2022, to discuss how she went "from leaving a domestic violent home to running a successful real estate business." For several weeks before the webinar, Khoury advertised the event on her public Instagram account, where she testified that she had "around 2800" followers. Khoury required followers to "direct message me for the [registration] details." Khoury testified that she would then "ask[] to have everyone go through Patricia" (Khoury's colleague). According to Khoury, people interested in the webinar "would need to register for the webinar to receive the link." Khoury recounted that Patricia "created the Zoom link and she facilitated the webinar." Khoury also testified that she thought registrants needed to enter their "name, email address, and password" to enter the meeting. Khoury recalled that the password for the webinar was "2022, I believe." Although Khoury explained that she "was under the impression that, yes, this was a private webcast," she later "realized that there was an oversight and that specific link was put into a calendar within a public website that should never have been there."

From jail, Moumen asked Marcella, his real estate agent (John Crow), and his friend ("Andrew") to attend Khoury's presentation.[3] During a jail call on August 4, 2022, Marcella informed Moumen that "John [Crow] is going" to attend the presentation and that he is "going to bring a recorder and record the whole thing like he has to." When Moumen expressed concern that Crow might not attend and that he wanted to make sure Crow filmed the event, Marcella told Moumen not to worry because "he is going to do it." Moumen also discussed attendance with Andrew. During those discussions, Moumen said that he needed Andrew's help because "[t]here's this event that Marcella found that my ex-wife is doing. I need you to go in there and be a PI." Moumen stated that he "need[ed] somebody to record, see if she's defaming my character." When

---

[3] There is no direct evidence that either Marcella or Andrew attended the webinar. However, the record supports the circuit court's finding that Moumen repeatedly urged them to participate.

Andrew agreed to attend, Moumen told Andrew to "[t]alk to Marcella about it because you know, these calls are recorded.  I am not allowed to do so."

The day before Khoury's webinar, Marcella informed Moumen that Crow "was saying he got the meeting link for Melanie's [Khoury's] virtual thing that she is doing tomorrow." Moumen asked if Crow could "videotape the whole thing from beginning to end" because "there's going to be something in there that's defaming, you know?"  He also asked if Marcella could have the link forwarded to her and if she could "create a new email address" because she was "going to have to put your name or something and then your email" in to attend the webinar. Later, Andrew asked when Moumen wanted him "to do the PI stuff."  Moumen advised Andrew to use fake information, a generic email address, and to "log in and videotape the whole thing."

Crow called Moumen after the webinar and recounted the program contents.  Crow stated that he had recorded part of the webinar and had sent Marcella a copy of the recording.  Moumen indicated that he was "going to let the lawyers know.  Just send whatever you got, send it to Marcella so I can send it to my lawyers."  Khoury testified that Crow attended the webinar but that "he did not list himself as John Crow" and that "[h]e said he didn't use his real name."

On August 18, 2022, two days after Khoury's webinar, the JDR court held a hearing to discuss whether Khoury should receive attorney fees following entry of the July 26, 2022 family abuse protective order.  During the hearing, Moumen's counsel revealed that Moumen had obtained a recording of the webinar.  Because Moumen had "a recording of a private meeting at which the petitioner [Khoury] spoke," the JDR court issued an order directing Moumen to show cause why he should not be held in contempt for violating the protective order.  The JDR court ultimately found Moumen in civil contempt.  Moumen appealed that finding to the circuit court.[4]

_____

[4] The notice of appeal sent to Khoury indicates Moumen appealed "from a decision made by the Juvenile and Domestic Relations Court of said County."  The appeal was of case number JA430891-05-04, in which the JDR court found Moumen guilty of civil contempt for violating

- 4 -

The circuit court entered a scheduling order requiring the parties to exchange their exhibit lists at least 15 days before trial. The scheduling order expressly provided that "[a]ny exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment." Moumen's counsel filed his witness and exhibit list 14 days before trial. He filed a corrected list 13 days before trial.

At the circuit court hearing on December 20, 2023, Khoury acknowledged on cross-examination that she only learned during the JDR court hearing (for attorney fees following entry of the protective order) that someone had recorded part of her webinar.[5] When Moumen's counsel asked what Khoury had said to her counsel "about the webcast at that moment," Khoury's counsel objected on the basis that Khoury's statements were covered by the attorney-client privilege. Moumen's counsel argued Khoury's counsel had waived the attorney-client privilege by proffering Khoury's statements because those statements "ha[d] to go with the issue that we originally were talking about and that was the issue of whether this [webinar] was public or private."[6] The circuit court sustained the objection by Khoury's counsel. Khoury also "beg[ged] the Courts to renew my protective order." When Moumen's counsel responded by objecting, the circuit court judge interjected, stating, "There's no need to. The protective order, we already discussed that. It's in force right now, even as we speak."

_____

the JDR court's protective order. During the hearing on December 20, 2023, the court also asked if "all I'm hearing today is whether watching the webinar was a violation of the protective order." In response, Moumen's counsel answered, "That's exactly right."

[5] Moumen's counsel, however, sought to establish that recording Khoury's webinar did not violate the protective order because the webinar was "on a public website available to the public without password protection, without registration required."

[6] Moumen's counsel does not state specifically what Khoury's counsel said that he alleges resulted in waiving the attorney-client privilege.

Moumen's counsel also questioned Khoury concerning screenshots from the Keller Williams website's calendar page contained in Exhibit 8. Khoury's counsel objected to Moumen's counsel asking questions about Exhibit 8 because Moumen's counsel did not disclose the exhibit in accordance with the circuit court's scheduling order. Moumen's counsel claimed that he did disclose the exhibit because Exhibit 8 "is an overlay over Exhibit 3 from the 10/4 meeting—from the 10/4 testimony." In response, Khoury's counsel stated that Moumen "had an obligation to provide this to me in accordance with this Court's scheduling order." Moumen's counsel countered that it was impeachment evidence and claimed that, even if he had failed to comply with the scheduling order, "I don't think there's any prejudice to this because Ms. Danker [Khoury's counsel] saw this months and months ago." The circuit court sustained the objection but permitted Moumen's counsel to ask if the exhibit showed the password listed under the webinar link. While Khoury initially stated that she "believed that this was a private webcast," she later acknowledged that the password to the session "was under the link" and that the password "did not protect [her]" from people viewing her content.

As Moumen's counsel began referencing his Exhibit 7—which is described in his exhibit list as "[s]creenshots of a countdown to the webcast dated August 15, 2022"—Khoury's counsel again objected based on the late disclosure. The circuit court sustained the objection.

After considering the evidence, the circuit court found that Moumen violated the protective order by "induc[ing] others to follow [Khoury]. That's what's the—that's why he's in violation. So if you want an answer, yes, he's in contempt." Khoury sought, and was awarded, attorney fees. After the court awarded attorney fees, it stated that there was "no need for a new protective order. This one, now that we've got my ruling of the day, everybody knows what we're talking about." However, Khoury's counsel claimed that Code § 16.1-253.2 "does require that when the Court finds the contempt, that you enter a new protective order as of the finding of the contempt, which is

today." Both counsel did mention to the judge that the current protective order was still in effect for quite a while yet—with Khoury's counsel informing the court that it was still in effect for 7 more months until July 2024. In response, the circuit court judge stated, "My new protective order is just a renewal of the old one. I'm not going to add any new—it'll take days to come up with language here that won't be objected to. So we're just going to—I'm just going to renew this one. That's my new protective order." The circuit court also granted Khoury's request that Moumen be prohibited from surveilling the parties' children and Khoury's household members. Moumen now appeals to this Court.

## II. ANALYSIS

### A. The Circuit Court's Evidentiary Rulings

#### 1. Khoury's Attorney-Client Privilege

Moumen claims that the circuit court's decision to "prevent[] Moumen from cross-examining Khoury about statements made to Khoury's counsel concerning the public nature of the webinar at issue" was error "because the attorney-client privilege had been waived by her counsel during in-court proceedings." Specifically, Moumen claims that "[w]hen Khoury informed Danker [her attorney] of information pertaining to the public versus private nature of the webinar—a key issue in the eyes of the trial court—and Danker then revealed that information at a hearing, the privilege was waived."

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v.*

- 7 -

*Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

The attorney-client privilege "belongs to the client and not to the attorney." *Commonwealth v. Edwards*, 235 Va. 499, 509 (1988). "The waiver, like the privilege, [also] belongs to the client." *Id.* "The fact that in exceptional situations the lawyer under the Rules has either a limited discretion or a limited obligation to disclose a client confidence does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed . . . ." Va. Sup. Ct. R. pt. 6, sec. II, Preamble. The attorney-client privilege "may be expressly waived by the client, or a waiver may be implied from the client's conduct." *Banks v. Mario Indus.*, 274 Va. 438, 454 (2007) (quoting *Edwards*, 235 Va. at 509). Such conduct includes when "persons outside the privilege can overhear what is said." *Id.* (quoting *Clagett v. Commonwealth*, 252 Va. 79, 92 (1996)).

Khoury's counsel did not waive the attorney-client privilege because the privilege belongs to Khoury as the client—not to her counsel. Moumen has not argued that any exception to this general rule applies in this case now before us. Furthermore, the cases cited by Moumen to support the claim that Khoury's counsel waived the attorney-client privilege do not stand for that proposition. Moumen's citation to *Commonwealth v. Edwards* is unconvincing because that case involved a voluntary disclosure by an attorney's client—not a proffer of a client's statement by the client's attorney. *Edwards*, 235 Va. at 506-10. Moumen's citation to *United States v. Cote*, 456 F.2d 142, 144-145 (8th Cir. 1972), is also unconvincing because that case dealt with clients who waived the attorney-client privilege by filing amended tax returns—not with an attorney who waived his client's privilege. Moumen has therefore not cited to any precedent to support his claim

- 8 -

that a person's attorney waives the attorney-client privilege when the attorney proffers the client's statements. Therefore, we cannot conclude that the circuit court abused its discretion by ruling that Khoury's counsel did not waive the attorney-client privilege.

### 2. *Moumen's Excluded Exhibits*

Moumen claims, "The trial court erred by prohibiting Moumen from introducing his Exhibits 7 and 8 because those exhibits were intended to impeach Khoury, which the Scheduling Order permitted." Moumen alternatively argues that he already produced Exhibits 7 and 8 to Khoury because those exhibits "had been previously exchanged in the underlying case." Even if he did not timely produce the exhibits to the circuit court, Moumen argues that "there was no prejudice to Khoury."

"A circuit court's judgment is presumptively correct, and the appellant bears the burden of presenting a sufficient record to permit a determination whether the circuit court committed an alleged error." *Commonwealth Transp. Comm'r v. Target Corp.*, 274 Va. 341, 348 (2007). "When testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." *Rose v. Jaques*, 268 Va. 137, 154 (2004) (quoting *Whittaker v. Commonwealth*, 217 Va. 966, 968 (1977)). The proffer requirement safeguards "our duty under Code § 8.01-678 to reverse only when the trial court error actually prejudiced the defense." *Ray v. Commonwealth*, 55 Va. App. 647, 650 (2010). "Absent a proffer showing 'harm was done,' we are 'forbidden to consider the question.'" *Id.* (quoting *Scott v. Commonwealth*, 191 Va. 73, 78-79 (1950)).

Moumen's Exhibit 7 (screenshots of a countdown to Khoury's webcast) and Exhibit 8 (screenshots of the Keller Williams website's calendar) are not included in the record before this Court on appeal. Thus, the record is insufficient to consider Moumen's claims regarding those exhibits. Although the circuit court and parties viewed the exhibits, neither Exhibit 7 nor Exhibit 8

was made part of the record.  Moumen also did not proffer the precise contents of the excluded

exhibits.  His failure to ensure the exhibits were included in the record deprives this Court of the

ability to determine whether the circuit court erred and whether Moumen suffered any prejudice as a

result.  *Target Corp.*, 274 Va. at 348.  Therefore, this Court will not disturb the circuit court's

decision below prohibiting Moumen from introducing Exhibits 7 and 8.

## B.  The Circuit Court's Contempt Finding

Moumen asserts that "[t]he admissible evidence adduced at trial was insufficient to find

Moumen in civil contempt of court for violating the JDR Protective Order."  Because Moumen

argues there was insufficient evidence to find him in contempt, he also argues that the "award of

attorney's fees was improper."

"[W]e review the exercise of a court's contempt power under an abuse of discretion

standard."  *Mills v. Mills*, 70 Va. App. 362, 373 (2019) (alteration in original) (quoting *Zedan v.

Westheim*, 60 Va. App. 556, 574 (2012)).  "In reviewing a finding of contempt where 'evidence

was taken *ore tenus*[,] . . . the conclusion on the facts stands upon the same plane as the verdict

of a jury.'"  *Id.* (alterations in original) (quoting *Drake v. Nat'l Bank of Com. of Norfolk*, 168 Va.

230, 240 (1937)).  "As such, the circuit court's factual findings may 'not be disturbed on appeal

unless plainly wrong or without evidence to support' them."  *Id.* (quoting *Ware v. Ware*, 203 Va.

189, 195 (1962)).

The Supreme Court has stated, "'[T]here must be an express command or prohibition'

which has been violated in order for a proceeding in contempt to lie."  *Petrosinelli v. PETA, Inc.*,

273 Va. 700, 707 (2007) (quoting *French v. Pobst*, 203 Va. 704, 710 (1962)).  "In a show cause

hearing, the moving party need only prove that the offending party failed to comply with an

order of the trial court."  *Koons v. Crane*, 72 Va. App. 720, 737 (2021).  "Once the movant

proves noncompliance, 'the burden is on the obligor to provide justification for the failure to comply.'" *Id.* at 737-38 (quoting *Barnhill v. Brooks*, 15 Va. App. 696, 704 (1993)).

The record before this Court on appeal supports the circuit court's finding that Moumen disobeyed a court order. Almost immediately after the protective order was entered, Moumen and Marcella were discussing ways to evade its terms. Moumen told Marcella that, while he could not surveil Khoury, she could. Moumen asked multiple people—including Marcella, John Crow, and his friend Andrew—to attend the webinar. Moumen received assurances from Marcella that "John [Crow] is going" to attend the webinar and that he was "going to bring a recorder and record the whole thing." Moumen told Andrew that he needed Andrew to "go in there and be a PI." He also encouraged Andrew to talk to Marcella about attending the webinar because "these calls are recorded. I am not allowed to do so." Moumen advised Andrew how to avoid detection during the webinar, telling Andrew to use a generic email address and fake information. Crow also used a fake name when accessing the webinar. Crow recorded part of the event, sent a copy to Marcella, and discussed the recording with Moumen. Moumen used these individuals as personal private investigators to surveil Khoury during her webinar, in direct violation of the protective order. For these reasons, we certainly cannot say the circuit court abused its discretion in finding Moumen in contempt of court.[7]

---

[7] To the extent that Moumen also challenges the award of Khoury's attorney fees and costs, his argument is premised on a successful challenge to the circuit court's contempt finding. Having determined that the circuit court did not abuse its discretion in finding Moumen in contempt of court, we find the circuit court also did not abuse its discretion in awarding attorney fees and costs to Khoury.

## C. The New Protective Order

On appeal, Moumen argues that the circuit court erred by "adopting Khoury's argument that Code § 16.1-253.2 required the trial court to issue a new Protective Order even if Moumen was in contempt of such order."[8]

"Issues of statutory construction are questions of law which we review de novo." *McKee Foods Corp. v. Cnty. of Augusta*, 297 Va. 482, 495 (2019). Code § 16.1-253.2(A) provides that anyone who violates a provision of a protective order issued under Code § 16.1-279.1 is guilty of a Class 1 misdemeanor when the violation is of a provision prohibiting the respondent from (1) "going or remaining upon land, buildings, or premises," (2) "further acts of family abuse," (3) "committing a criminal offense," or (4) contacting the abused individual. Code § 16.1-253.2(A). If a criminal defendant is convicted of an offense under Code § 16.1-253.2, "the court shall, in addition to the sentence imposed, enter a protective order pursuant to § 16.1-279.1 for a specified period not exceeding two years from the date of conviction." Code § 16.1-253.2(D). Code § 16.1-253.2 sets "criminal penalties for a violation of a protective order issued under Code § 16.1-279.1." *Elliott v. Commonwealth*, 277 Va. 457, 460 (2009).

Assuming without deciding that Moumen timely challenged the circuit court's issuance of a new protective order, the circuit court erred in entering a new protective order under Code § 16.1-253.2(D). Existing case law and the statutory text clearly establish that Code § 16.1-253.2(D) applies to criminal proceedings—not to civil contempt proceedings. *Elliott*, 277 Va. at 460; Code § 16.1-253.2. Moumen was neither charged with, nor convicted of, a criminal

---

[8] Moumen claims that "the ends of justice must be applied to reach this issue" if it is "deemed not sufficiently preserved" because "it would be a manifest injustice to let the trial court's finding stand in light of the trial court's initial ruling and Khoury's argument to the contrary." We will assume without deciding for our analysis here that Moumen preserved this argument for appeal regarding the circuit court's issuance of a new protective order and whether Code § 16.1-253.2 applies in civil contempt proceedings.

offense in this case, so Code § 16.1-253.2 does not apply. *Elliott*, 277 Va. at 460. *Cf. Virk v. Clemens*, 81 Va. App. 632, 661-62 (2024) (addressing summary contempt and explaining the inapplicability of criminal procedural statutes in such proceedings).

Here, the circuit court found Moumen in civil contempt for violating the provision of a protective order issued under Code § 16.1-279.1 that prohibited him from inducing others to surveil Khoury. However, that finding does not fall within the class of violations defined as criminal under Code § 16.1-253.2. Nor could Khoury, as a private individual, prosecute a criminal action against Moumen. *See, e.g.*, *In re Horan*, 271 Va. 258, 263 (2006) ("[T]he conduct of a prosecution on behalf of the people by the prosecutor is an executive act." (quoting *Genesee Prosecutor v. Genesee Circuit Court*, 194 N.W.2d 693, 698 (Mich. 1972))). Despite the express limitation on the circuit court's authority to issue a new protective order that is not based on criminal violations, the circuit court here imposed a new protective order solely on the basis of a civil contempt finding. The circuit court did not convict Moumen of a criminal offense or provide him with the constitutional rights of a criminal defendant. *Cf. Scialdone v. Commonwealth*, 279 Va. 422, 442-44 (2010) (due process protections apply to proceedings regarding indirect contempt); *United Steelworkers of America v. Newport News Shipbuilding & Dry Dock Co.*, 220 Va. 547, 550 (1979) (noting significant differences between civil and criminal contempt proceedings, including protections for the accused).

The circuit court also could not have issued a new protective order under its general authority to punish Moumen for his contempt of court or through some other means without additional process. Although all courts have the inherent authority to punish for contempt, it is settled law that the legislature may regulate the exercise of the contempt power. *Ferrara v. Commonwealth*, 299 Va. 438, 447 (2021). Family protective orders (like the one at issue in this case) are purely statutory, and the General Assembly has specified in clear terms the

circumstances in which a court may issue one. *See* Code §§ 16.1-253.1, 16.1-253.2(D), 16.1-253.4, 16.1-278.14, 16.1-279.1. It is well-established that the JDR court cannot issue a protective order without a party first filing a petition requesting that the court issue a protective order.[9] Code § 16.1-260(A) clearly states that "[a]ll matters alleged to be within the jurisdiction of the [JDR] court shall be commenced by the filing of a petition." *See also Baldwin v. Baldwin*, No. 0310-19-4, slip op. at 10, 2019 Va. App. LEXIS 290, at \*14 (Dec. 10, 2019) (concluding that "a protective order is commenced by petition").[10] Consequently, a circuit court also cannot issue a new protective order without a party filing a petition because when a party appeals "to the circuit court as a *de novo* appeal of a JDR court decision," then "the circuit court's jurisdiction [is] derivative of and thus dependent upon the jurisdiction of the JDR court." *Knight v. Ottrix*, 69 Va. App. 519, 526 (2018).[11]

Here, Khoury did not file a petition for a protective order in the circuit court. In fact, she did not ask the circuit court to issue a new protective order until well into the December 20, 2023 hearing, which was scheduled as an appeal of the JDR court's decision finding Moumen in civil contempt for violating the JDR court's protective order. Therefore, the circuit court erred in issuing the new protective order as the circuit court lacked the authority to do so because (1) Khoury did not file a petition for a new protective order as required in this situation now before us; and (2) the exception to that requirement in Code § 16.1-253.2(D) did not apply here as Moumen was not convicted of a criminal offense under Code § 16.1-253.2(A).

---

[9] Indeed, Code § 16.1-279.1(B)(1) indicates that a petitioner must "file a written motion requesting a hearing" even to extend a preexisting protective order.

[10] While not binding, unpublished decisions may be cited as persuasive authority. *See* Rule 5A:1(f); *Smith v. Commonwealth*, 78 Va. App. 371, 383 n.4 (2023).

[11] According to Code § 16.1-296(I), which addresses appeals from JDR courts to circuit courts, "In all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court."

D.  Moumen's Jail Calls

Finally, Moumen argues that Khoury's counsel violated Rule 4.4 of the Rules of Professional Conduct by receiving "attorney-client privileged jail calls" involving Moumen that Khoury's counsel "knew or reasonably should have known" were privileged—and that Khoury's counsel "failed to notify Moumen or his counsel of such calls or to return them to the sender, and further disseminated such information to Khoury for review."  Moumen contends that Khoury's counsel "deprived Moumen of due process and a fair trial under the 5th and 14th Amendments of the U.S. Constitution and was fraud by omission or nondisclosure."  Because "this issue was not preserved at the trial court level," he asks this Court to invoke the ends-of-justice exception, "otherwise a manifest injustice would occur."[12]

"An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient."  Rule 5A:20(c)(2).  "Only 'sufficient' assignments of error are recognized by this Court."  *Egan v. Butler*, 290 Va. 62, 79 (2015) (citing Rule 5:17(c)(1)(iii)).  "[T]he purpose of assignments of error is to point out the errors . . . on which [an] appellant intends to ask a reversal of the judgment, and to limit discussion to these points."  *Env't Staffing Acquisition Corp. v. B&R Constr. Mgmt.*, 283 Va. 787, 792 (2012) (second and third alterations in original) (quoting *Yeatts v. Murray*, 249 Va. 285, 290 (1995)).  Assignments of error are not "a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal."  *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017).  Rather, "[a]ssignments of error are the *core* of the appeal."  *Id.*  (emphasis in original).

---

[12] On brief to this Court, Khoury's counsel maintained that neither she, "other attorneys at her firm, the staff at her firm," nor Khoury ever "accessed Moumen's privileged attorney-client communications"—i.e., the calls between Moumen and his then-attorney while Moumen was in jail.

As an appellate court, we are "limited to reviewing the assignments of error" regarding the trial court's decision that are "presented by the litigant[s]." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017). Indeed, this Court "sits to review and correct errors of trial courts," and we are "limited to the record of the proceedings which have taken place in the trial court." *Bissell v. Commonwealth*, 199 Va. 397, 400 (1957). "When a party files a notice of appeal, that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.'" *McCoy v. McCoy*, 55 Va. App. 524, 528 (2010) (quoting *Watkins v. Fairfax Cnty. Dep't of Family Servs.*, 42 Va. App. 760, 771 (2004)). While an appellant who has failed to preserve an argument or objection before the circuit court may raise the ends-of-justice exception on appeal to address errors that the appellant failed to preserve in accordance with Rule 5A:18, our application of that sparingly invoked exception "is appropriate" only when there was a judgment of the trial court on that issue and "when the judgment of the trial court was error." *Charles v. Commonwealth*, 270 Va. 14, 17 (2005).

Moumen's assignment of error concerning the jail calls simply fails to challenge any ruling of the circuit court as the circuit court had already lost jurisdiction over Moumen's case by the time this issue arose. The circuit court issued its final order on December 20, 2023, and the circuit court lost jurisdiction over this case 21 days after that final order—on January 10, 2024. Moumen maintains that he was unaware that Khoury or her counsel may have had access to privileged attorney-client information until at least April 19, 2024—more than three months after this case had left the bosom of the circuit court. The ends-of-justice exception to Rule 5A:18, therefore, would not even be appropriate for this assignment of error because the circuit court did not ever issue any judgment or decision regarding Khoury's alleged access to privileged

information to which Moumen could now assign error on appeal. Consequently, this Court simply cannot reach this assignment of error.

## III. CONCLUSION

In short, the circuit court did not err in finding that Khoury's counsel had not waived the attorney-client privilege, and we do not disturb its decision prohibiting Moumen from introducing Exhibit 7 and Exhibit 8 at the hearing as we do not have either exhibit in the record before us on appeal for us to be able to consider them.

Furthermore, the circuit court did not err in finding Moumen in civil contempt for violating the JDR court's protective order, and it did not err in awarding Khoury her attorney fees and costs at trial. We do not reach Moumen's last assignment of error concerning the jail calls because he is not challenging any decision or ruling of the circuit court. However, we reverse the circuit court's decision to issue a new protective order because Code § 16.1-253.2 did not authorize the circuit court to enter a new protective order in this case and because the circuit court did not otherwise have the authority in this particular situation to issue a new protective order through other means without additional due process—including the lack of even a petition from Khoury requesting the circuit court to issue a new protective order. Therefore, we vacate the new protective order and remand this case for further proceedings consistent with this opinion.[13]

*Affirmed in part, and reversed, vacated, and remanded in part.*

---

[13] Khoury seeks appellate attorney fees incurred in this appeal. An award of appellate attorney fees is discretionary, *Friedman v. Smith*, 68 Va. App. 529, 545 (2018), and "[w]e award appellate fees only in the unusual case where the arguments on appeal are 'not fairly debatable under any reasonable construction of the record or the governing legal principles.'" *Cabral v. Cabral*, 62 Va. App. 600, 613 n.10 (2013) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 642 (2008)). In this case, because both parties have partially prevailed on appeal, we deny Khoury's request for appellate attorney fees.